716 F.2d 1127
 INDIANA PLANNED PARENTHOOD AFFILIATES ASSOCIATION, INC., a
not-for-profit Indiana Corporation; Planned Parenthood
Association of Northwest Indiana, Inc., a not-for-profit
Indiana Corporation; Ralph Streeter, M.D. and Clarence W.
Boone, M.D., individually and as representatives for all
other physicians similarly situated; Sally Boe and Jane
Doe, individually and as representatives for all minors
similarly situated, Plaintiffs-Appellants,
v.
Linley E. PEARSON, as Attorney General of the State of
Indiana; Stephen R. Goldsmith, as Prosecuting Attorney for
the Nineteenth Judicial Circuit of the State of Indiana and
as representative for all other Prosecuting Attorneys
similarly situated, Defendants-Appellees.
 No. 82-2827.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 29, 1983.
Decided Aug. 26, 1983.
 
 Lynn I. Miller, Katharyn M. Marks, Gaffney, Anspach, Schember, Klimaski & Marks, Washington, D.C., William T. Rosenbaum, Dillon, Hardamon & Cohen, Indianapolis, Ind., for plaintiffs-appellants.
 James Bopp, Jr., Brames, Bopp & Haynes, Terre Haute, Ind., for defendants-appellees.
 Before PELL and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 PELL, Circuit Judge.
 
 
 1
 In this case we are asked to decide the constitutionality of several sections of an Indiana statute requiring that no physician perform an abortion upon an unemancipated minor without first notifying the minor's parents. In particular, the appellants challenge the constitutional sufficiency of the procedures established by the statute whereby an unemancipated minor may petition for waiver of the notification requirement on the grounds that she is mature enough to make the abortion decision on her own or that, even if immature, waiver of notification is in her best interests. The district court upheld the statute in its entirety, stating that it furthers the state's "deep and laudable interest in the children and families of Indiana."
 
 
 2
 Since we heard oral argument in this case, the Supreme Court has decided two cases directly bearing on several of the issues presented to us. See City of Akron v. Akron Center for Reproductive Health, Inc., --- U.S. ----, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); Planned Parenthood Association v. Ashcroft, --- U.S. ----, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983). Accordingly, we closely follow the analysis put forth in those cases in considering the challenges to the Indiana statute.
 
 I. FACTS
 
 3
 On February 25, 1982, the Indiana Legislature amended section 35-1-58.5 of the Indiana Code (entitled "Regulation of Abortion") by adding a section imposing the notification requirement challenged here, Ind.Code Ann. Sec. 35-1-58.5-2.5 (Burns Supp.1982).[1] This statute became effective on September 1, 1982.
 
 
 4
 On August 23, 1982, the appellants filed their complaint seeking injunctive, declaratory, and other relief under 42 U.S.C. Sec. 1983 to prevent enforcement of the Indiana statute. Judge Holder scheduled a trial on the merits for August 31. On August 30, two pregnant minors moved to intervene, a motion the judge granted the next day.
 
 
 5
 At the pretrial conference held on August 31, the court certified three classes: the class of Indiana physicians who would be affected in their medical practice by the statute; the class of all pregnant and potentially pregnant resident and out-of-state minors who seek or may seek abortions in Indiana, of whom some are mature and of whom some are immature but for whom parental notification would not be in their best interests; and the defendant class of prosecuting attorneys for each Indiana judicial circuit.
 
 
 6
 Trial began on August 31 and concluded on September 3. Both sides presented witnesses who testified about the medical and psychological effects of abortions performed on minors. Witnesses also testified about the likely effects the notification statute would have on minors seeking abortions and on the practices of abortion providers.
 
 
 7
 On October 11, 1982, the district court issued its findings of fact, conclusions of law, and judgment, in which it held that the statute was constitutional. In addition, the court struck the allegations of the complaint that asserted that the corporate plaintiffs potentially could be held criminally liable for the acts of their employee physicians in violation of the statute.
 
 
 8
 The appellants filed a notice of appeal on November 9, 1982. On December 14, the district court denied their motion for an injunction pending appeal. On January 18, 1983, a three-judge panel of this court denied the appellants' motion for an injunction pending appeal.
 
 II. NOTIFICATION AND CONSENT STATUTES
 
 9
 There was some discussion in the briefs and at oral argument about whether the constitutional analysis applicable to parental consent statutes was relevant to an analysis of parental notification statutes. The argument was that because a notification requirement does not permit parents to veto their minor daughter's decision to have an abortion, a state has no duty to provide a minor with a judicial or other procedure for bypassing the notification requirement, even though a state has such a duty for minors seeking to avoid a parental consent requirement.
 
 
 10
 Until recently, there was room for doubt about the relevance to notification statutes of the constitutional analysis applicable to consent statutes. In Bellotti v. Baird (Bellotti II), 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), the plurality opinion of Justice Powell concluded that a state cannot give parents an absolute veto over the decision of a pregnant minor to have an abortion. Justice Powell said that the state must provide an alternative procedure for a minor to obtain authorization for an abortion. In such a proceeding, he said, a minor is entitled to show that she is sufficiently mature and informed to make the abortion decision or that, even if she is too immature to make the decision, the abortion is nevertheless in her best interests. Id. at 643-44, 99 S.Ct. at 3048-49. The plurality opinion also concluded that a state is required to make this bypass procedure available under notification statutes as well. Id. at 647, 99 S.Ct. at 3050.
 
 
 11
 In H.L. v. Matheson, 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981), the Court upheld a Utah statute that required a physician to give notice to the parents of a minor seeking an abortion. Although five justices expressed the view that it would be unconstitutional to apply a notice requirement to minors who could demonstrate their maturity, id. at 420, 101 S.Ct. at 1176 (concurring opinion of Powell, J.), 428 n. 3, 101 S.Ct. at 1181 n. 3 (dissenting opinion of Marshall, J.), the majority opinion did not decide whether a notice requirement would be constitutional as applied to emancipated or mature minors, id. at 407 & n. 14, 412 n. 22, 101 S.Ct. at 1170 & n. 14, 1172-1173 n. 22.
 
 
 12
 This issue has now been settled. In City of Akron v. Akron Center for Reproductive Health, Inc., --- U.S. ----, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), the Court said that the state's interest in encouraging parental involvement--either through a consent or notification statute--in a minor's decision to have an abortion "must give way to the constitutional right of a mature minor or of an immature minor whose best interests are contrary to parental involvement." Id. at 2491 n. 10. The Court went on to hold that a procedure whereby parents would be notified when a minor filed a petition seeking court approval of an abortion would be unconstitutional as applied to a mature minor. Id. at 2498 n. 31.[2]
 
 
 13
 In requiring that states provide bypass procedures in connection with both consent and notification statutes, the Court has made no suggestion that procedures insufficient for consent statutes would be sufficient for notification statutes. Rather than differentiating between consent and notification statutes, the Court in City of Akron stated that it is "parental involvement" that an emancipated or mature minor must have an opportunity to avoid. 103 S.Ct. at 2491 n. 10. The apparent reason for the similar treatment of notification and consent requirements is that, as a practical matter, a notification requirement will have the same deterrent effect on a minor seeking an abortion as a consent statute has. See H.L. v. Matheson, 450 U.S. at 420 & n. 9, 101 S.Ct. at 1176-1177 & n. 9 (concurring opinion of Powell, J.) (stating that the rationale for requiring a state to provide a judicial bypass to a consent requirement is applicable to notification statutes).
 
 
 14
 Unemancipated minors are fundamentally different from adults because they are financially dependent upon their parents and have numerous legal incapacities. In addition, parents have considerable leeway to impose punishment upon their children for disobedience. Because of this, minors often have no choice but to comply with parental directives.
 
 
 15
 Although notification requirements do not give parents the legal power to veto their daughter's abortion decision, as a practical matter they may. "[Y]oung pregnant minors, especially those living at home, are particularly vulnerable to their parents' efforts to obstruct both an abortion and their access to court." Bellotti II, 443 U.S. at 647, 99 S.Ct. at 3050 (plurality opinion of Powell, J.). It was a recognition of this vulnerability that led the plurality in Bellotti II to state that confidentiality was necessary in a waiver-of-consent proceeding. See id.
 
 
 16
 Because parental involvement brought about by either consent or notification statutes may result in similar efforts by parents to block the abortion, we will apply the Supreme Court's analysis with respect to consent bypass procedures in our consideration of the constitutional sufficiency of Indiana's notification bypass procedures.III. BURDEN OF PROOF
 
 
 17
 The district court held that the appellants "have failed to meet their burden of proof that the act in question does not serve significant state interests." This was error. Although certain abortion restrictions aimed at minors may be upheld if they support a "significant" state interest, City of Akron, 103 S.Ct. at 2491 n. 10, the state bears the burden of showing a sufficient justification for the abortion restriction, id. at 2491 & n. 10 (restrictive state regulation "must be supported by a compelling state interest" or, in the case of minors, by a "significant" interest); Charles v. Carey, 627 F.2d 772, 776-78 (7th Cir.1980).
 
 
 18
 Nevertheless, this error does not require reversal. The Supreme Court has foreclosed arguments that a state has shown an insufficient interest to support a consent or notification requirement. "[A] State's interest in protecting immature minors will sustain a requirement of a consent substitute, either parental or judicial." City of Akron, 103 S.Ct. at 2497. In light of this virtually conclusive finding, we cannot say that Indiana has failed to show that the parental notification requirement is supported by a significant state interest.[3]
 
 IV. PROCEDURAL DEFICIENCIES
 A. Abstention
 
 19
 At oral argument the suggestion was made that the proper course for us would be to abstain until the Indiana courts have had an opportunity to construe the procedural aspects of the notification statute. We disagree.
 
 
 20
 In City of Akron v. Akron Center for Reproductive Health, Inc., the Supreme Court refused to abstain until the state courts had interpreted the challenged ordinance. The Court said that "[i]t is reasonable to assume ... that a state court presented with a state statute specifically governing abortion consent procedures for pregnant minors will attempt to construe the statute consistently with constitutional requirements." 103 S.Ct. at 2498 (emphasis added). The Court held that abstention was not appropriate in that case because the ordinance "creates no procedures for making the necessary determinations." Id.[4]
 
 
 21
 Here we are faced with a statute that is as silent about many of the bypass procedures as the Akron ordinance was. The statute makes no reference to expedited appeals or appeals of any kind, appointment of counsel, or the extent of the protective measures the juvenile court may take after denying a minor's request for waiver. In addition, we are concerned that a substantial period of time will elapse before a state record of interpretations of the statute will be developed,[5] deterring in the meantime many minors from seeking waiver of parental notification. Accordingly, we decline to abstain.
 
 B. The Independent Decisionmaker
 
 22
 In the plurality opinion of Bellotti II, Justice Powell stated that a state must assign the procedure for determining whether a minor is mature to an independent decisionmaker, which could either be a court or a nonjudicial alternative such as an administrative agency or officer. 443 U.S. at 643 & n. 22, 99 S.Ct. at 3048 & n. 22 (plurality opinion of Powell, J.). The appellants contend that the statute impermissibly requires a mature minor to go to court to avoid notification because, they say, it would be less burdensome on the abortion right to delegate the maturity determination to the minor's physician.
 
 
 23
 Although such a procedure would be simpler, quicker, and undoubtedly less distressing for a minor than requiring her to go to court, Indiana was not constitutionally required to provide the least burdensome alternative to notification. The plurality in Bellotti II said that a state could choose to employ a nonjudicial decisionmaker,[6] but it was not required to do so. In Planned Parenthood Association v. Ashcroft, the Court upheld a state statute that provided for a judicial determination of maturity. 103 S.Ct. at 2526 (opinion of Powell, J.). In light of the Court's holding that a judicial determination of maturity is constitutional, we cannot hold that the Indiana statute is unconstitutional for having delegated the maturity determination to a court.
 
 C. The "Best Interests" Provision
 
 24
 The statute provides that "[n]otice under this section shall be waived by the juvenile court if the court finds that the minor is mature enough to make the abortion decision independently or that notification would not be in the minor's best interests." The appellants contend that this provision is unconstitutional because it allegedly allows the juvenile court to deny waiver of notice for a concededly mature minor if the court finds that notice would be in the child's best interests.
 
 
 25
 The state disputes this interpretation, contending that the statute provides that a court can waive notification even if the minor is found to be immature if the notification would not be in the minor's best interests. The state says that the juvenile court may not deny waiver for a mature minor on the basis that notification would be in the minor's best interests.
 
 
 26
 We note, first, the requirement that, "[w]here fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." Planned Parenthood Association v. Ashcroft, 103 S.Ct. at 2526 (opinion of Powell, J.). If the statute did provide what the appellants contend it does, it would be unconstitutional. "[T]he State must provide an alternative procedure whereby a pregnant minor may demonstrate that she is sufficiently mature to make the abortion decision herself or that, despite her immaturity, an abortion would be in her best interests." City of Akron, 103 S.Ct. at 2498 (emphasis added).
 
 
 27
 We are persuaded that the appellants' interpretation of the statute is simply incorrect. The words "or that notification would not be in the minor's best interests" are a grant of authority to the juvenile court to waive notification despite the minor's immaturity if it is in the minor's best interests not to notify the parents. The statute does not--and constitutionally cannot--give the juvenile court the authority to refuse to waive notification despite a finding that the minor is mature. For us to interpret the language as the appellants suggest would be to go out of our way to find an unconstitutional construction of the statute.
 
 D. Expedited Appellate Review
 
 28
 Section 35-1-58.5-2.5(d) provides that the juvenile court must rule on a petition for waiver within forty-eight hours of the filing of the petition. It specifies no procedures for appellate review of an adverse decision. The district court held that the statute's failure to make explicit provision for expedited appeal did not render the statute constitutionally deficient because, it said, the Indiana Rules of Trial Procedure provide guidelines for appeals.
 
 
 29
 A judicial alternative to parental notice or consent "must 'assure' that the resolution of this issue 'will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained.' " Planned Parenthood Association v. Ashcroft, 103 S.Ct. at 2525 n. 16 (opinion of Powell, J.) (quoting Bellotti v. Baird (Bellotti II), 443 U.S. 622, 644 (1979) (plurality opinion of Powell, J.)). Thus a parental notification statute that did not provide for prompt resolution of the waiver petition would be unconstitutional.[7]
 
 
 30
 The Supreme Court recently discussed the necessary specificity of procedures a judicial bypass statute must have in order to be constitutionally sufficient. In City of Akron v. Akron Center for Reproductive Health, Inc., the Court affirmed the appellate court's ruling that the challenged ordinance impermissibly failed to specify the procedures for determining whether a minor's abortion decision was informed. The Court noted that the ordinance, which required a minor to obtain a court order permitting an abortion in lieu of parental consent, "creates no procedures for making the necessary determinations." 103 S.Ct. at 2498. Nor was it sufficient for the city to assert that the juvenile courts in Ohio might find that they had jurisdiction to make the necessary determinations. Id. at 2498 & n. 31.
 
 
 31
 On the same day, the Court in Planned Parenthood Association v. Ashcroft upheld a Missouri statute requiring parental consent or judicial approval of a minor's decision to have an abortion. Unlike the Akron ordinance, the Missouri statute required an appeal from an adverse decision to be perfected within five days from the filing of the notice of appeal. In addition, the statute directed the state supreme court to promulgate rules to provide expedited appellate review of such cases. Justice Powell concluded that "this section provides the framework for a constitutionally sufficient means of expediting judicial proceedings." 103 S.Ct. at 2525 n. 16 (opinion of Powell, J.).
 
 
 32
 The Indiana statute is far more analogous to the ordinance in City of Akron than to the statute in Ashcroft. Unlike the Missouri statute, section 35-1-58.5-2.5 does not even mention appeals, much less specifying the time in which they must be perfected or directing the Indiana Supreme Court to promulgate rules governing expedited appellate review.
 
 
 33
 The state contends, however, that expedited consideration is assured because Rule 62(D)(1) of the Indiana Rules of Trial Procedure and Rule 6(B) of the Indiana Rules of Appellate Procedure allow the appellate court to issue a stay of the trial court's decision in an emergency. Even assuming such stays are generally available in emergencies, we do not understand in what way a stay of a denial of a waiver petition would ensure expedited consideration of the appeal. The statute requires court approval of waiver, so staying the juvenile court's denial of waiver would still leave the minor unable to have an abortion without parental notification. A stay of the denial would not be equivalent to finding that the minor was mature or that an abortion would be in her best interests.[8] We conclude that the two cited rules are irrelevant to ensuring an expedited appeal of a denial of waiver.
 
 
 34
 The state also contends that other Appellate Rules would allow expedited appeals from the denial of waiver petitions. The appellees state that Rule 4(A)(10) allows an appeal filed with the court of appeals to be transferred to the Indiana Supreme Court if an emergency exists. This is inaccurate. The rule provides that a transfer is possible if the appellant makes a showing, "under oath, that the appeal involves a substantial question of law of great public importance and that an emergency exists for a speedy determination" (emphasis added). It is doubtful that an appeal from the denial of waiver would be deemed to involve a substantial question of law of great public importance, because the determination of maturity is largely an issue of fact and concerns only the minor, the parents, and the abortion providers. Also, the transfer is discretionary.
 
 
 35
 As the sole other statutory citation to support its contention that the Indiana courts will expedite appeals in these cases, the state cites Appellate Rule 4(F). The state says that the rule allows for expedition of an appeal where it involves matters of general public concern. In fact, however, the rule provides that "[matters] of general public concern may ... be advanced by order of the court after they are fully briefed."
 
 
 36
 There are several difficulties with the application of this rule to expedited appeals in abortion cases. First, expedition is discretionary with the court, as shown by the use of the phrase "may ... be advanced." Second, it is doubtful that a case involving waiver of notification is a matter of general public concern, because, as noted above, only the minor, the parents, and the abortion provider have an interest in the case.[9] For reasons of confidentiality, the public is not even supposed to know the identity of the minor. Third, the reference to "full briefing" suggests that the rule is inadequate for appeals by minors. For a minor without counsel, the requirement of full briefing would be an insuperable bar because minors are untrained in the law and would be extremely unlikely to have any idea of how to brief their cases. Even for minors with counsel, the requirement suggests delay in a situation in which a rapid resolution is required.
 
 
 37
 Finally, the state cites the unreported case of In re Infant Doe to show that Indiana courts allow expedited appeals in emergencies. The state says that in that case a child was born on Friday; a judge heard the case on Saturday, issued an order that night, and a written opinion on Monday. On Wednesday, the Indiana Supreme Court heard and decided the case.
 
 
 38
 We are not reassured by the state's citation of this case. In re Infant Doe is unreported and all of the decisions and orders have been sealed. The state does not even inform us as to the subject matter of the case.[10] That the Indiana courts gave expedited consideration to one case does not mean that, as a matter of course, abortion notification waiver appeals will be treated in a similar fashion.
 
 
 39
 For these reasons, we hold that the district court erred in holding that the statute was sufficiently specific about expedited appeals. As noted, a waiver statute must "assure" expeditious consideration of appeals. Bellotti II, 443 U.S. at 644, 99 S.Ct. at 3048 (plurality opinion of Powell, J.). If the statute had specified the procedure for appeals or at least directed the Indiana Supreme Court to promulgate rules governing expedited appeals, we would be satisfied. See Planned Parenthood Association v. Ashcroft, 103 S.Ct. at 2525 n. 16 (opinion of Powell, J.). As it is, however, the only assurance we have that Indiana courts will expedite appeals is the state's assertion that they will, yet we do not understand how, in the absence of legislation, the state has control over how the courts manage their dockets.
 
 E. Appointment of Counsel
 
 40
 The appellants contend that the statute is unconstitutional because it fails to provide for any court-appointed counsel to a minor seeking waiver of parental notification. The statute makes no mention of counsel, but section 31-6-7-2(a) of the Indiana Code provides that the juvenile court "may appoint counsel to represent any child at any ... proceeding." The district court held that appointment of counsel was a matter for the sound discretion of the juvenile court and said that it could not be assumed that the court would abuse its discretion.
 
 
 41
 On the one hand, due process generally does not require that a state provide a civil litigant with counsel. The state only must give a litigant the opportunity to retain counsel. See Goldberg v. Kelly, 397 U.S. 254, 270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). On the other hand, the Supreme Court has said that the judicial bypass procedure must provide " 'an effective opportunity for an abortion to be obtained' " by qualified minors. Planned Parenthood Association v. Ashcroft, 103 S.Ct. at 2525 n. 16 (opinion of Powell, J.) (emphasis added) (quoting Bellotti II, 443 U.S. at 644, 99 S.Ct. at 3048 (plurality opinion of Powell, J.)). In addition, the provisions of a notice or consent statute "[must] not unduly burden the right to seek an abortion." Bellotti II, 443 U.S. at 640, 99 S.Ct. at 3046 (plurality opinion of Powell, J.).
 
 
 42
 The Court also has stressed the "unique nature of the abortion decision," Bellotti II, 443 U.S. at 642, 99 S.Ct. at 3047 (plurality opinion of Powell, J.), and noted that "there are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible," id. As a result of this, the Court has held that a state can impose a consent or notification requirement upon minors only if it allows them an opportunity to try to show that they are emancipated or mature or that, even if immature, consent or notification would not be in their best interests. A state does not extend minors the privilege of going before an independent decisionmaker to determine maturity; rather, minors have a right to try to establish their maturity.
 
 
 43
 The question we must address, then, is whether, considering the uniqueness of the abortion decision, the "grave and indelible" effect of denying the minor's right to make the decision, the "need to preserve the constitutional right," id., and the legal and social status of minors, a minor needs appointed counsel in order to have an effective opportunity to pursue her right to seek a judicial bypass of the notification requirement.
 
 
 44
 We note, first, that as a practical matter the choice for most minors will be between having a court-appointed attorney or no attorney at all. The more under age eighteen a minor is, the less likely it is that the minor will have enough money of her own to be able to hire an attorney to represent her at the waiver hearing. Naturally, a minor seeking to avoid parental notification will not feel free to ask her parents to pay for her attorney.
 
 
 45
 Furthermore, it is a reasonable conclusion that the few minors who do have sufficient independent funds with which to employ an attorney will be without any experience enabling them to hire the representation that they would need in this delicate situation. The minor certainly would not desire to seek the help of the family lawyer. One who was determined enough to walk into the office of an unknown lawyer would have no assurance that she would not be attempting to retain a counsel who had strongly held religious or moral beliefs about the wrongfulness of abortion. Presumably such an attorney would not accept the representation, thus causing further delay, and we would certainly expect an attorney who held such beliefs not to accept a court appointment. Even adults, it must be recognized, who have had no prior need for the services of a lawyer, often display an ineptness in securing a lawyer to represent adequately their particular interests.
 
 
 46
 Second, there is an obvious need for a minor to have some help in determining how to go about presenting her case. If the waiver procedure set forth in section 35-1-58.5-2.5 simply involved speaking to the judge in order to demonstrate maturity, counsel might not seem essential. But no legal proceeding is that simple. A minor, completely untrained in the law, needs legal advice to help her understand how to prepare her case, what papers to file, and how to appeal if necessary.[11] Requiring an indigent minor to handle her case all alone is to risk deterring many minors from pursuing their rights because they are unable to understand how to navigate the complicated court system on their own or because they are too intimidated by the seeming complexity to try.
 
 
 47
 Third, the nature of these cases is such that one cannot assume that attorneys will volunteer to represent minors at the hearings even for clearly meritorious cases. First, an attorney has no financial incentive to take a case on a contingent fee basis because the minor seeks no money damages from anyone. Second, there is no provision in Indiana juvenile law for a prevailing party to be awarded attorney's fees to compensate for the lack of a money judgment in its favor.
 
 
 48
 The state recognizes the validity of these concerns by agreeing that indigent minors need appointed counsel. Indeed, it concedes that "[t]here can be no doubt that in a case dealing with the abortion decision, refusal to assign counsel to an indigent minor would be reversible error."
 
 
 49
 Although we are impressed with the state's candor, we do not believe that this concession solves the problem. Our concern is that, because the statute itself makes no reference to appointment of counsel, the state's concession would not be binding on the juvenile courts. Because section 31-6-7-2(a) makes the appointment of counsel discretionary with the juvenile court, a judge could rely on that discretion to deny counsel to a minor regardless of what the state thinks. A minor could appeal from a judge's decision denying counsel in her case, but the delay resulting from resolution of this side issue might well result in the birth of the baby by the time the issue was resolved. Although we do not assume that the juvenile court will abuse its discretion, we cannot be unmindful that the consequences of an abuse of discretion could result in a mature minor's loss of her right both to have counsel and to have an abortion.
 
 
 50
 Accordingly, we hold that the statute impermissibly fails to provide for the appointment of counsel to minors. See Wynn v. Carey, 582 F.2d 1375, 1389 & n. 28 (7th Cir.1978) (faulting an Illinois consent statute for failing to provide for the appointment of counsel in waiver proceedings). We believe that this result is necessary to ensure that the waiver hearing becomes an effective opportunity for the minor to obtain an abortion upon the proper showing. We do not believe that the requirement of counsel will be a significant burden on the bar: most cases will be necessarily short, and most work will be routine and will consist of guiding the minor through the necessary steps in making her case and appealing.
 
 
 51
 We note that the juvenile court will necessarily be limited in its determination of whether a minor is indigent for purposes of appointment of counsel. As noted above, few minors will have enough independent money to afford counsel, even if their parents are wealthy. Those minors would qualify as indigent because, as far as their access to money is concerned, they are indigent. It would of course be inappropriate for the court to seek payment from the parents of the minor, because such indirect notice of the child's petition would be unconstitutional. See City of Akron, 103 S.Ct. at 2498 n. 31. Indeed, the Indiana Code allows the court to waive parental payment where "[j]ustice would not be served by ordering payment" in juvenile court proceedings. Ind.Code Ann. Sec. 31-6-4-18(b)(3) (Burns Supp.1982).
 
 F. Confidentiality
 
 52
 The statute provides that any records made as a result of the waiver proceedings are subject to the rules of confidentiality provided in section 31-6-8 of the Indiana Code. The appellants object to the application of section 31-6-8-1(d) to waiver petition records. That section provides that "[t]he juvenile court may grant any person providing services to the child or his family access to the records on the child and his family." The appellants say that "any person" includes parents and that therefore the statute inadequately protects confidentiality.
 
 
 53
 It would be unconstitutional for the juvenile court to allow parents to obtain indirect notice of the waiver petition under this subsection. See City of Akron, 103 S.Ct. at 2498 n. 31. We agree with the state, however, that "any person providing services to the child" does not include a parent. "Services" is used in the technical sense of court-authorized aid to a "child in need of services" as defined by section 31-6-4-3. "Any person providing services" thus refers to service providers such as social workers, not parents.[12]
 
 G. Vagueness
 
 54
 The appellants challenge the statute on the grounds that it does not define "emancipated," "actual notice," "constructive notice," or "immediate threat and grave risk to the life or health of the pregnant woman." We hold that the language is sufficiently well defined.
 
 
 55
 We conclude that "emancipation" is not impermissibly vague. The term is one of general usage and understanding in Indiana. See, e.g., Brokaw v. Brokaw, 398 N.E.2d 1385, 1388 (Ind.App.1980) (relevant factors include whether the minor lives at home and whether the parents provide his or her food, transportation, college tuition, and medical expenses). Cf. Planned Parenthood Association v. Ashcroft, 103 S.Ct. at 2525 n. 18 (opinion of Powell, J.) (stating that "emancipation" was not vague as used in Missouri consent statute).
 
 
 56
 Similarly, we believe that "actual notice" is sufficiently defined under Indiana law. In Wienke v. Lynch, 407 N.E.2d 280, 286 (Ind.App.1980), the court held that actual notice was notice that "has been directly and personally given to the person to be notified," which the court went on to say encompassed all degrees and grades of evidence of notice. This definition would undoubtedly include telephoned notice to parents, rather than requiring any in-person notice, because telephoning is both personal and direct.
 
 
 57
 The statute defines "constructive notice" as certified mail to the last known address of one of the parents. Contrary to the appellants' contention, the statute is clear that, if no acknowledgement is received from a parent in response to the mailing within forty-eight hours from the time of posting, the abortion may be performed.
 
 
 58
 The reference to "immediate threat and grave risk to the life or health of the pregnant woman" is not vague. Rather, this allows a physician to use a medical judgment as to the necessity for the abortion, a judgment that would be questioned only if the physician did not believe there was a health danger.H. Criminal Sanctions
 
 
 59
 The statute provides that a physician may perform an abortion without parental notification on an emancipated minor. Court determination of emancipation is unnecessary. The appellants contend that the statute will deter physicians from performing abortions upon minors because it requires physicians to make a difficult legal determination under penalty of being charged with a felony if they make the wrong determination.
 
 
 60
 We are not persuaded that the requirement that the physician determine whether the minor is emancipated is made impermissible by virtue of the criminal penalty. Section 35-1-58.5-4 of the Indiana Code provides that "[i]t is a class C felony for a person knowingly or intentionally to perform an abortion not expressly provided for in this chapter." "Knowingly" is defined as being aware of a high probability that one is engaging in the proscribed conduct. Ind.Code Ann. Sec. 35-41-2-2(b) (Burns 1979).
 
 
 61
 Although a physician cannot be expected to learn the details of a minor's life before performing an abortion, the statute does not require him to do so. If the physician actually believes that the minor is emancipated, or at least is not aware that there is a high probability that she is not, or if he does not discover, prior to performing the abortion, that she is not telling the truth, liability will not attach.
 
 
 62
 Furthermore, a minor's right to avoid notification if she is emancipated is not precluded even if the doctor decides she is not emancipated. The minor can always establish emancipation at the court proceeding. A minor who is emancipated is necessarily mature enough to avoid notifying her parents. Also, a physician can protect himself by requiring that the court determine emancipation.
 
 
 63
 As to the appellants' contention that the criminal penalty is unconstitutional because it provides no protection to a doctor falsely accused by a minor of knowing that she was not emancipated, our response is that this would be an unfortunate occurrence but not an unconstitutional one. The physician would be in the same position as any other person wrongly accused of a crime. If the minor and the doctor did conspire to send notice to the wrong address, for example, then of course the doctor would be liable.
 
 I. Protective Measures
 
 64
 Subsection (e) of the challenged statute provides that if the juvenile court denies the minor's petition for waiver of parental notification, "the court shall assume the responsibility of taking whatever protective action is thought necessary by the court for the minor in connection with the implementation of subsection (a)." The appellants contend that this provision means that, if the court denies the waiver petition, the minor could be subjected to any action the juvenile court was otherwise authorized to take under Indiana juvenile law. They suggest, for example, that the court could determine that the minor was promiscuous and hence a child in need of services, Ind.Code Ann. Sec. 31-6-4-3(a)(3), (6) (Burns Supp.1982), with the result that the court upon its own motion could enjoin the child from leaving the state, id. Sec. 31-6-7-14(a)(3), or order her held without a hearing for several days, id. Sec. 31-6-7-14(c).
 
 
 65
 The state responds that all that this subsection means is that, upon denial of the waiver petition, the juvenile court must notify the minor's parents that the child had filed a petition. The phrase "protective action" means only that the court has authority to send a social worker to "ease the notification process."
 
 
 66
 We begin by discussing the constitutionality of the requirement that the court notify the minor's parents once the petition is denied. Indiana's interest in requiring parental notification upon denial of the waiver petition is, presumably, to encourage parental participation in the abortion decision in order to protect the best interests of the immature minor. See City of Akron, 103 S.Ct. at 2497. On the other hand, a state has a duty to " 'assure' " that the proceedings to determine maturity " 'be completed with anonymity.' " Bellotti II, 443 U.S. at 644, 99 S.Ct. at 3048 (plurality opinion of Powell, J.), quoted in Planned Parenthood Association v. Ashcroft, 103 S.Ct. at 2525 n. 16 (opinion of Powell, J.).
 
 
 67
 We conclude that the requirement of confidentiality outweighs the state's interest. First, the state's interest is as fulfilled when the petition is simply denied as when the pregnant minor never goes to court to seek a waiver. Second, a minor whose petition is denied has three choices, in the absence of state involvement: she can simply tell her parents that she is pregnant, or she can tell them that she wants to have an abortion, or she can tell them that she sought to obtain court waiver of notification.[13] If the state requires notification, it takes away the first two choices. If the minor knows that her parents have deep religious or moral beliefs about the wrongfulness of abortion, she may have good reason to tell them only about the fact of her pregnancy and not that she sought to have an abortion to deal with it. Similarly, parents who might at least be somewhat receptive to a discussion of the advisability of abortion might well be extremely upset if the state told them that their daughter was not only pregnant but had sought to obtain an abortion behind their backs.
 
 
 68
 Indiana's automatic notification provision thus adds another factor for a minor to consider before going to court: whether the benefit of not having to tell her parents that she is pregnant if the court grants her petition outweighs the risk of losing the ability to choose what to tell her parents if the court denies her petition. It is hardly speculative to imagine that even some mature minors will be deterred from going to court if they know that their parents will be notified if their petitions are denied, because no minor can be certain that the court will rule in her favor.
 
 
 69
 "[A] State [is required] to act with particular sensitivity when it legislates to foster parental involvement in this matter." Bellotti II, 443 U.S. at 642, 99 S.Ct. at 3047 (plurality opinion of Powell, J.). We believe that the state has not acted with the necessary sensitivity in requiring that the juvenile court notify the parents of a minor whose petition the court has denied. Confidentiality during and after the waiver proceeding ensures that no minors will be deterred from exercising their right to try to establish maturity because of the fear that their parents may be notified. Notification will inevitably result from denial of the petition because pregnancy cannot be hidden forever, but the state's form of notification is likely to cause additional trauma to the minor and is unlikely to encourage family harmony. Thus we conclude that whatever interest the state does have in stepping in at this point is not significant enough to justify the chilling effect on minors contemplating going to court.
 
 
 70
 As for the appellants' contention that the subsection allows the juvenile court to take whatever action it thinks necessary to effect notification, it follows from our holding that postdenial notice is inappropriate that any action taken to ensure notification is also inappropriate.[14]
 
 J. Venue
 
 71
 Section 35-1-58.5-2.5(b) provides that a minor seeking waiver of the notice requirement may petition for waiver in the juvenile court in the county in which she resides. The appellants challenge this provision on the ground that the statute provides no guidance to a nonresident minor seeking an abortion in Indiana, and in fact denies out-of-state minors the right to resort to the judicial bypass procedure.
 
 
 72
 If the statute barred out-of-state minors from employing the judicial bypass procedure, it would be unconstitutional because the effect would be to prohibit mature outof-state minors from having abortions in Indiana. See Doe v. Bolton, 410 U.S. 179, 200, 93 S.Ct. 739, 751, 35 L.Ed.2d 201 (1973) (holding unconstitutional the provision in a Georgia abortion statute limiting abortions to Georgia residents).
 
 
 73
 In order to interpret the venue requirements of section 35-1-58.5-2.5(b), it is necessary to consider Rule 75 of the Indiana Rules of Trial Procedure. Subsection (D) of that rule provides that Rule 75 supersedes any more special statute relating to venue, the place of trial, or the authority of the court to hear the case. It also states that no statute fixing the place of trial shall be deemed a requirement of jurisdiction.
 
 
 74
 Rule 75 provides that any case may be commenced in any court in any county except that a court may transfer a case to another court if the former does not meet preferred venue requirements and the latter does. For an out-of-state minor, no court would be preferred (there being no opposing party to consider) and thus the general rule that a case may be commenced in any county would prevail. Accordingly, we hold that the venue requirements are constitutional as applied to out-of-state minors seeking abortions in Indiana.
 
 
 75
 As to resident minors, the preferred venue under Indiana law is the county of the minor's residence, Rule 75(A)(8). The appellants contend that this restriction unduly burdens the process of seeking waiver because a minor might have to travel a substantial distance to petition the court. We agree with the district court that this provision is constitutional.
 
 
 76
 A petition for waiver of notice may be brought by the minor or her next friend, Sec. 35-1-58.5-2.5(b), or by her physician, Sec. 35-1-58.5-2.5(c). the notification statute provides that the petition is to be filed in the minor's home county no matter who files it, but Rule 75(D) supersedes this section and allows the general venue rule of Rule 75(A) to apply. Rule 75(A)(5) provides that preferred venue includes the county where one or more individual plaintiffs reside.[15] Accordingly, it appears that a resident minor has considerable flexibility about where to bring her petition.
 
 K. The Waiting Period
 
 77
 The appellants contend that the mandatory twenty-four-hour waiting period between actual notice and the abortion and the forty-eight-hour waiting period for constructive notice by certified mail unconstitutionally burden the right of a minor to have an abortion.
 
 
 78
 A twenty-four-hour waiting period is unconstitutional as applied to adult women seeking abortions. City of Akron, 103 S.Ct. at 2503. In that case, the city had contended that the waiting period would allow a woman to reflect upon her decision to have an abortion, with beneficial effects. The Court held that no legitimate state interest was shown to be furthered "by an arbitrary and inflexible waiting period," and that there was no showing that a woman's abortion decision would be more informed as a result of the delay. The Court noted, with apparent approval, the findings of the district court (which nevertheless upheld the waiting period) that the delay increases the cost of obtaining an abortion by requiring the woman to make two trips to the abortion clinic and often results in a delay of more than twenty-four-hours. Id.
 
 
 79
 The Court has not directly addressed the constitutionality of waiting periods imposed in connection with parental notification or consent statutes. In H.L. v. Matheson, 450 U.S. 398, 412 & n. 21, 101 S.Ct. 1164, 1172 & n. 21, 67 L.Ed.2d 388 (1981), the Court held that a parental notification statute was not unconstitutional for failure to include a mandatory period of delay following notification. The Court noted that "time is likely to be of the essence in an abortion decision." Id. at 412, 101 S.Ct. at 1172.
 
 
 80
 Indiana contends that the waiting period is necessary and appropriate in order to ensure that notification results in parental involvement in minors' decisions to have abortions. The state asserts that the delay is not a significant burden in light of that interest. The state also notes that an Indiana statute requires a twenty-four-hour delay for adult women seeking abortions, Ind.Code Ann. Sec. 35-1-58.5-2(d), a provision not challenged in this appeal.[16]
 
 
 81
 On the other hand, the same objections to the waiting periods for adults listed in City of Akron apply to waiting periods for minors. The delay increases the cost of obtaining abortions by requiring the minor to make two trips to the abortion clinic. As noted in Part IV E, supra, cost is especially relevant to minors because few have significant amounts of money available independent of their parents' control. The waiting period is arbitrary and inflexible because it applies both to minors whose parents have been notified within the time period and object and those whose parents have already expressed approval of the abortion. In addition, there was evidence in the record that "a combination of a woman's schedule and the schedule of her abortion clinic may often serve to produce 'a substantially longer delay' than 24 hours." Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1014 (1st Cir.1981) (quoting Charles v. Carey, 627 F.2d 772, 785 (7th Cir.1980)). As the Supreme Court noted in Matheson, "time is likely to be of the essence in an abortion decision."
 
 
 82
 Although we recognize that the state does have an interest in encouraging parental involvement, we are not persuaded that this interest outweighs the severe burden the statute as written places upon the minor's abortion right. Notification itself in most cases should lead to parental consultation without the state's additional help because minors are particularly susceptible to parental wishes, see Part II, supra. Accordingly, we hold that the state cannot require that an abortion be delayed once notification has been effected upon a minor's parents.
 
 
 83
 By contrast, we uphold the constitutionality of the forty-eight-hour constructive notice provision to the extent that it allows a delay in the performance of the abortion to effectuate notice. As noted in Part IV G, supra, the abortion may proceed if, after forty-eight-hours, the parent has not responded to notification. If the parent does respond before forty-eight-hours, additional delay may not be required by the state.
 
 L. Corporate Liability
 
 84
 Finally, we affirm the district court's decision to strike the allegations of the appellants' complaint that contended that the statute is unconstitutional because it allows an abortion clinic or other employer of physicians to be held liable for a violation of the statute under a theory of vicarious liability. We are persuaded that this claim is too speculative to be sustainable, as it appears from our review of Indiana criminal statutes that such a prosecution is not possible, a conclusion with which the state agrees. Liability is imposed only upon the physician.
 
 CONCLUSION
 
 85
 Although we have upheld the holding of the district court with respect to some challenges to the Indiana statute, we are constrained to enjoin the appellees from enforcing section 35-1-58.5-2.5 in its entirety. The statute contains no severability clause and, more importantly, the constitutionality of the general notification provision is dependent upon the adequacy of the waiver-of-notification procedures the state has established. The state may not require any minors to notify their parents until it has enacted a statute providing for constitutionally adequate waiver procedures. We note, however, that Indiana is free to reenact a parental notification statute that contains the procedures that we have held are presumptively constitutional in this opinion.
 
 
 86
 The judgment of the district court is reversed and the appellees are enjoined from enforcing section 35-1-58.5-2.5. The mandate shall issue forthwith.
 
 
 87
 REVERSED.
 
 
 88
 FAIRCHILD, Senior Circuit Judge, concurring.
 
 
 89
 The majority opinion asserts "the state cannot require that an abortion be delayed once notification has been effected upon a minor's parents." We do not have before us a statute narrowly drawn to require a 24 hour delay only after notification of parents who have not yet approved the abortion nor had an opportunity to attempt dissuasion and drawn to terminate even that requirement where parents approve or abandon efforts to dissuade within the 24 hour period. I prefer to avoid any implication as to the validity of such a statute.
 
 APPENDIX
 102nd GENERAL ASSEMBLY
 ABORTION--NOTICE REQUIREMENTS
 HOUSE ENROLLED ACT NO. 1144
 
 90
 An Act to amend IC 35-1-58.5 concerning notice requirements for abortion.
 
 
 91
 Be it enacted by the General Assembly of the State of Indiana:
 
 
 92
 SECTION 1. IC 35-1-58.5 is amended by adding a NEW section 2.5 to read as follows: Sec. 2.5(a) No physician shall perform an abortion upon an unemancipated pregnant woman under the age of eighteen (18) years without first having given at least twenty-four (24) hours actual notice to one (1) of the parents or the legal guardian of the minor pregnant woman as to the intention to perform such abortion, or if such parent or guardian cannot be reached after a reasonable effort to find him or her, without first having given at least forty-eight (48) hours constructive notice to one (1) of the parents or the legal guardian of the minor pregnant woman by certified mail to the last known address of one (1) of the parents or guardian computed from the time of mailing.
 
 
 93
 (b) A minor who objects to notice being given her parent or guardian under this section may petition, on her own behalf or by next friend, the juvenile court in the county in which the minor resides for a waiver of the notice requirement under subsection (a).
 
 
 94
 (c) A physician who feels that compliance with the notice requirement in subsection (a) would have an adverse effect on the welfare of the pregnant minor or on her pregnancy may petition the juvenile court in the county in which the minor resides, within twenty-four (24) hours of the abortion request, for a waiver of the notice requirement under subsection (a).
 
 
 95
 (d) The juvenile court must rule on a petition filed by a pregnant minor under subsection (b) or by her physician under subsection (c) within forty-eight (48) hours of the filing of the petition. Before ruling on such petition, the court shall consider the concerns expressed by the pregnant minor and her physician. Notice under this section shall be waived by the juvenile court if the court finds that the minor is mature enough to make the abortion decision independently or that notification would not be in the minor's best interests.
 
 
 96
 (e) If the juvenile court, in ruling on a petition filed under subsection (b) or subsection (c), refuses to waive the notice requirement in subsection (a), the court shall assume the responsibility of taking whatever protective action is thought necessary by the court for the minor in connection with the implementation of subsection (a).
 
 
 97
 (f) IC 31-6-8 applies to all records of the juvenile court that are made as a result of proceedings conducted under this section.
 
 
 98
 (g) This section shall not apply where there is an emergency need for a medical procedure to be performed such that continuation of the pregnancy provides an immediate threat and grave risk to the life or health of the pregnant woman and the attending physician so certifies in writing.
 
 
 99
 Approved February 25, 1982.
 
 
 
 [1]
 The text of the statute is appended to this opinion
 
 
 [2]
 Although this holding appeared in a footnote, it was not dictum. The Court's conclusion that notification would be unconstitutional was necessary to its holding that abstention was inappropriate and that the ordinance provided no acceptable means for determining whether a minor was emancipated or mature
 
 
 [3]
 Challenges to the sufficiency of the state's notification bypass procedures are not, of course, precluded by this state interest and we discuss challenges to Indiana's procedures in Part IV, infra
 
 
 [4]
 Another factor was that the case involved an ordinance, rather than a statute, which necessitated use of the state court system. The crucial concern, though, was the absence of a procedure for making the necessary determinations
 In Planned Parenthood Association v. Ashcroft, the Court refused to abstain because the statute, which did specify the procedures, was susceptible to a fair saving construction. 103 S.Ct. at 2526 n. 21 (opinion of Powell, J.).
 
 
 [5]
 The statute became effective on September 1, 1982, yet we have discovered no cases interpreting the statute nor have any been brought to our attention by the parties
 
 
 [6]
 Indeed, Indiana has delegated the determination of whether a minor is emancipated to the physician. Ind.Code Ann. Sec. 35-1-58.5-2.5(a) (Burns Supp.1982)
 
 
 [7]
 Although only one other justice joined in Justice Powell's Ashcroft opinion, we are persuaded that this standard represents the judgment of a majority of the Court. Four justices in Ashcroft were of the view that no consent requirement for any minors was appropriate even with a judicial bypass procedure. 103 S.Ct. at 2531-32 (dissenting opinion of Blackmun, J.). It follows that those justices would agree that, assuming a consent requirement were constitutional, a bypass procedure must be speedy
 
 
 [8]
 The distinction is between a stay of an order granting affirmative relief and a stay of an order denying affirmative relief. In both cases, the effect of the stay is to preserve the status quo ante. An example of the former type is In re Pisello, 155 Ind.App. 484, 293 N.E.2d 228 (1973), cited by the state to show the availability of stays in emergencies. In that case, the court of appeals held that it had the authority to stay execution of the lower court's judgment that the petitioner was a juvenile delinquent. Abortion notification waiver proceedings in which the court denies the petition are examples of the latter: a stay would leave things as they were before the juvenile court ruled, and would not permit an abortion to proceed immediately or provide an expedited appeal
 
 
 [9]
 The statute does not state whether Indiana has a right to intervene in a notification waiver proceeding or to appeal from a grant of waiver. Like the First Circuit in Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1011 n. 8 (1st Cir.1981), we would be concerned if such state participation, with its obvious potential for delay and its probable chilling effect on minors considering going to court, were permitted
 
 
 [10]
 According to newspaper reports, the case involved the refusal of Indiana courts to interfere with the decision of the infants' parents to deny nourishment to the infant, who suffered from Downs Syndrome and a detached esophagus. The infant died after a few days. These reports, showing a case having facts completely different from those present in waiver cases and apparently involving important questions of law, underscore our conclusion that the case does not establish that Indiana will routinely expedite waiver hearings
 
 
 [11]
 We recognize that appointed counsel will not be available until after the minor has filed her petition, because a court has to know the minor is seeking to avoid notification in order to appoint counsel for her. Nevertheless, there are many other subsequent aspects of the proceeding in which legal advice and help can play a crucial role
 
 
 [12]
 There are three other exceptions to the requirement of confidentiality that might, in theory, allow parents or other persons to obtain access to the records concerning the minor's notification waiver petition. See Ind.Code Ann. Sec. 31-6-8-1(b)(6) (Burns 1980) (availability to parents in a contest over custody or support), (e) (availability to legitimate researchers), (g) (availability for impeachment of a witness or discrediting of reputation in a criminal or delinquency proceeding). In light of the discussion of confidentiality in City of Akron, the Indiana statute was required but failed to make clear that these exceptions are inapplicable to the records of notification waiver proceedings
 
 
 [13]
 Conceivably the minor could obtain an abortion in another state or have an illegal abortion. These choices may exist in fact although they would violate Indiana policy
 
 
 [14]
 The language of subsection (e) strongly suggests that the legislature did not intend to limit the action to notifying parents. If only notice was intended, the subsection could have directed that "the court shall implement subsection (a)," i.e., notify parents. Instead, the wording invites action to ensure notification, and is not limited to sending social workers to the affected home
 
 
 [15]
 In addition, we note that Rule 75(D) provides that "[n]o statute or rule fixing the place of trial shall be deemed a requirement of jurisdiction." Where no party objects to venue, the issue is waived. Pund v. Pund, 171 Ind.App. 347, 357 N.E.2d 257 (1976)
 
 
 [16]
 We note that the state's reliance on this statute has been undercut by the decision in City of Akron