David **ZBARAZ**, **M.D.**, **and Allan G. Charles**, **M.D.**, **individually and on behalf of a class of all others similarly situated**, **Plaintiffs**,

v.

Neil **HARTIGAN**, **in his official capacity as Attorney General of the State of Illinois**; **and Richard M. Daley**, **in his official capacity as State's Attorney for Cook County**, **Illinois**; **their agents and successors**; **and all others similarly situated**, **Defendants**.

No. 84 C 771.

United States District Court,
N.D. Illinois, E.D.

May 4, 1984.

Harvey Grossman, The Roger Baldwin Foundation of the ACLU, Inc., Marc O. Beem, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for plaintiffs.

William G. Sullivan, Asst. Atty. Gen., Gen. Law Div., Richard M. Daley, State's Atty. of Cook County by Robert J. Tonos, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

On November 2, 1983, the Illinois General Assembly passed, over the veto of Governor Thompson, the Parental Notice Abortion Act, P.A. 83–890 (Senate Bill or "SB 521") which plaintiffs here challenge as unconstitutional on a number of grounds. SB 521 regulates the performance of abortions on unemancipated minors and incompetents. Section 8 of the Act provides that anyone who "intentionally, knowingly, or recklessly fails to conform" to any of the Act's requirements is guilty of a Class A misdemeanor.

Shortly before the Act was to take effect on January 31, 1984, plaintiffs filed a class action suit requesting a preliminary injunction or, alternatively, a temporary restraining order. On January 30, 1984, the parties agreed to extend a temporary restraining order, entered January 26, 1984, pending resolution of the issues presented in this case. On February 17, 1984, we certified a plaintiff class consisting of Drs. Allen G. Charles and David Zbaraz, as representatives of all duly licensed physicians presently performing or desiring to perform pregnancy terminations for unemancipated minors and disabled persons in the State of Illinois, on their own behalves, and on behalf of certain of their patients desiring abortions.[1] The defendant class consists of Richard M. Daley, in his official capacity as State's Attorney for Cook County, Illinois, and as representative of all the State's Attorneys of all of the counties of Illinois.[2]

Before us are the parties' simultaneous cross-motions for summary judgment. After a careful consideration of SB 521 in the light of recent Supreme Court decisions, as well as those of the Seventh Circuit, we find, as did Governor Thompson, that SB 521 is constitutionally defective. Therefore, plaintiffs' motion for summary judgment is granted and we will permanently enjoin defendants from enforcing its provisions.

---

1. Persons in the plaintiff class include (1) unemancipated minors allegedly capable of giving informed consent to an abortion procedure and those whose best interests would not be served by notice to both parents or, if applicable, to a legal guardian; and (2) adjudicated disabled persons for whom a guardian has been appointed, pursuant to Ill.Rev.Stat. ch. 110 ½, §§ 11a–3(a)(1) or 11a–3(a)(3), whose disability allegedly does not impair ability to give informed consent or whose best interests would not be served by notice to the guardian. As we read the Illinois Probate Act, the second category is not properly

a member of the plaintiff class, see discussion infra, as SB 521 does not apply to such persons. (SB 521's reference to section 11a–3(3) is ambiguous as there is no such section in the Probate Act. See discussion infra.)

2. Defendants' motion papers were filed by Neil Hartigan, Attorney General of Illinois. Defendant Richard M. Daley has adopted Hartigan's motion for summary judgment, memorandum, and reply.

## I. Parental Notice Abortion Act of 1983 [3]

Section 2 of the Act delineates the legislative intent in enacting the parental notice provisions—to further the compelling state interests of "1) protecting minors against their own immaturity, 2) fostering the family structure and preserving it as a viable social unit, and 3) protecting the rights of parents to rear children who are members of their households." The legislature found as fact

that 1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, 2) the medical, emotional and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, 3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, 4) parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child, and 5) parents who are aware that their minor daughter has had an abortion may better ensure that she receives adequate medical attention after her abortion. The legislature further finds that parental consultation is usually desirable and in the best interests of the minor.

Section 2(b)(1)–(5).

Section 4(a) of the Act provides that "[n]o person shall perform an abortion upon an unemancipated minor or upon an incompetent unless he or his agent has given at least 24 hours actual notice [in person or by telephone] to both parents or to the legal guardian...." However, a minor or incompetent who objects to notice "may petition, on her own behalf or by next friend, the circuit court of the county in which the minor resides or in which the abortion is to be performed for a waiver of the notice requirement...." Section 4(c).

Section 5 delineates the procedure for waiver of notice. A minor or incompetent may participate on her own behalf in the proceedings. The court shall appoint a guardian *ad litem* for her and advise her that she has a right to court appointed counsel, available upon her request. Court proceedings "shall be confidential" and "shall be given precedence" to ensure a prompt decision. The circuit court is also required to rule within 48 hours of the application. The court shall waive the notice requirement if it finds that the applicant is mature and well-informed enough to make the abortion decision on her own or if notification would not be in the applicant's best interests. Section 5(e) provides that a confidential record of the evidence be maintained. Further, if a circuit court denies waiver of notice, "[a]n expedited confidential appeal shall be available as the Supreme Court provides by rule...." Section 5(f). Section 5(g) states that "[t]he Supreme Court is respectfully requested to promulgate any rules and regulations necessary to ensure that proceedings ... are handled in an expeditious and confidential manner."

There are several exceptions to the 24 hour notice requirement available to the applicant: (1) medical emergency as determined by the physician (section 6); (2) when notice has been given and the parties (the parents to whom notice is due under section 4) accompany the minor or incompetent to the place of the abortion or submit signed notarized statements indicating that they have been properly notified (section 7(a)); and (3) notice to a minor's father is not necessary if the mother accompanies her and submits a notarized statement of notification and states orally to the physician that she has a reasonable belief that the father of the unborn child is the minor's father.

Section 8 of the Act provides that anyone who fails to conform to any of the Act's requirements is guilty of a Class A misdemeanor. Further, failure to provide persons to whom notice is due with the requisite information "is prima facie evidence of failure to obtain informed consent and of interference with family relations in appro-

---

**3.** The Act is set forth fully in Appendix I to this opinion.

priate civil actions" for which exemplary damages are not precluded by the statute.

On September 26, 1983, Governor Thompson vetoed SB 521. He found "many constitutional deficiencies", including the "waiver of notice" provisions which, he stated, could not pass constitutional muster under *City of Akron v. Akron Center for Reproductive Health, Inc.,* — U.S. —, 103 S.Ct. 2481, 2991 n. 10, 76 L.Ed.2d 687 (1983) (*"Akron"*) and *Bellotti v. Baird,* 443 U.S. 622, 644, 99 S.Ct. 3035, 3048, 61 L.Ed.2d 797 (1979) (*"Bellotti II"*. The Governor's veto was overriden on November 2, 1983.[4]

II. *Roe v. Wade* and its Progeny:

*Children and Abortion*

A decade[5] after the Supreme Court held that the right of privacy, grounded in the concept of personal liberty, guaranteed by the Constitution, encompasses a woman's right to decide whether to terminate her pregnancy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Court reaffirmed that decision in *Akron,* — U.S. —, 103 S.Ct. 2481, 2487 & n. 1, 76 L.Ed.2d 687 (1983) ("Since *Roe* was decided in February, 1973, the Court repeatedly and consistently has accepted and applied the basic principle that a woman has a fundamental right to make the highly personal choice whether or not to terminate her pregnancy") (citations omitted). However, a "woman's" fundamental right is not absolute, as the Court recognized in *Roe,* and the right becomes somewhat diluted as the particular "woman" is identified as a minor child or, per the Illinois Act, an "incompetent" or unemancipated minor. *See, e.g., H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981); *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).

Although a child, merely on account of her minority, is not beyond the protection of the Constitution, *see, e.g., Tinker v. Des Moines School District,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 222 (1969) (first amendment rights are available to students in a public school), the status of minors under the law is unique in many respects. *Bellotti II,* 443 U.S. at 633, 99 S.Ct. at 3042.

The Supreme Court has recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children, their inability to make critical decisions in an informed, mature manner, and the importance of the parental role in child rearing. *Id.* at 634, 99 S.Ct. at 3043. These reasons become especially salient in the context of a minor's decision to undergo an abortion. Moreover, a majority of the Court has indicated that it believes that pregnant adolescents are likely to reach poorly reasoned decisions concerning abortion.[6] *See, e.g.,*

---

4. SB 521 was passed on third reading, 44 yes, 8 no, 2 present. The veto override vote was 44 yes, 10 no, and 1 present.

5. The decade has been marked by the increasing, and we believe, unfortunate, "politicization" of the abortion issue. *See, e.g.,* Note, *The Supreme Court, 1982 Term,* 97 Harv.L.Rev. 78 & n. 3 (1983), citing *After Roe v. Wade: 10 Years Conflict over Abortion,* Wash.Post. Jan. 23, 1983, at AI, col. I.

6. *But see H.L. v. Matheson,* 450 U.S. 398, 453, 101 S.Ct. 1164, 1194, 67 L.Ed.2d 388 (1981) (Marshall, J. dissenting) ("some minors, in some circumstances, have the capacity and need to determine their health care needs without involving their parents"); Melton, *Minors and Privacy: Are Legal and Psychological Concepts Compatible?,* 62 Neb.L.Rev. 455, 467 & n. 63 (1983) (research suggests that adolescents are no less competent than adults in making decisions about health care matters); Dembitz, *The Supreme Court and a Minor's Abortion Decision,* 80 Colum.L.Rev. 1251, 1255–1256 (1980) (instead of "fantasizing" that pregnancy will "magically disappear", minor's decision to seek abortion is itself a signal of maturity). *See also* Lewis, *A Comparison of Minors' and Adults' Pregnancy Decisions,* 50 Am.J. Orthopsychiatry 446 (1980); Hofmann, *Consent and Confidentiality, Their Legal and Ethical Implications for Adolescent Medicine,* in Medical Care of the Adolescent 42, 51 (J. Gallagher, F. Heald, & D. Garell eds., 3d ed. 1976) ("[o]ne can well argue that an adolescent old enough to make the decision to be sexually active ..., and who is then responsible enough to seek professional aasistance for his or her problem, is ipso facto mature enough to consent to his own health care.")

*Bellotti II, supra,* 443 U.S. at 640, 99 S.Ct. at 3046; *Planned Parenthood of Missouri v. Danforth,* 428 U.S. 52, 91, 96 S.Ct. 2831, 2851, 49 L.Ed.2d 788 (1976).

■■■ State regulations restricting a woman's right to choose abortion must be supported by a compelling state interest. *Akron, supra,* 103 S.Ct. at 2491. The Court has emphasized, however, that because of the unique status of children under the law, "[s]tates have a 'significant' interest in certain abortion regulations aimed at protecting children 'that is not present in the case of an adult' ". *Id.* at n. 10, citing *Danforth, supra,* 428 U.S. at 75, 96 S.Ct. at 2843. To protect immature minors and to promote family integrity, a State may ensure that the abortion decision is made with understanding and after careful deliberation. *Akron, supra,* 103 S.Ct. at 2500 n. 32, citing *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981). However, any State restriction of the right to choose abortion must be "subject to searching judicial examination." *Akron, supra,* 103 S.Ct. at 2491.

With these considerations in mind, we will assess the constitutionality of SB 521.

### III.

Plaintiffs challenge SB 521 on a number of grounds, including its allegedly unconstitutional 24 hour waiting period, its allegedly inadequate judicial alternative to parental notification, and its assertedly overbroad application to incompetents.

### Abstention

■■■ Defendants argue, for the first time in their reply brief, that because Illinois courts have never had a chance to construe the procedural aspects of SB 521 and to apply them in a constitutional manner, we should abstain from deciding the constitutional issue presented in this case. Under the circumstances, we may not do so.

In *Bellotti v. Baird,* 428 U.S. 132, 146–147, 96 S.Ct. 2857, 2865–2866, 49 L.Ed.2d 844 (1976) ("*Bellotti I*"), the Supreme Court indicated that "abstention is appropriate where an unconstrued statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication....' " (citations omitted) The Court noted that, while the equitable practice of abstention is limited by considerations of delay and expense which application of the doctrine inevitably engenders, the Supreme Judicial Court of Massachusetts had adopted a Rule of Court under which an issue of interpretation of Massachusetts law could be certified directly to that court for prompt resolution. *Id.* at 150, 96 S.Ct. at 2867. The Court admitted that the availability of certification greatly simplified the abstention analysis, especially in the context of resolution of abortion issues where the importance of speed is "manifest". *Id.* at 151, 96 S.Ct. at 2868. Unlike Massachusetts, the Illinois certification procedures, as provided by Illinois Supreme Court Rule 20, are available only to the Supreme Court of the United States or to the Seventh Circuit Court of Appeals. *Cf. Wynn v. Scott,* 449 F.Supp. 1302, 1313–1314 (N.D.Ill.1978), *aff'd sub nom Wynn v. Carey,* 599 F.2d 193 (7th Cir.1979) (since abstention is an equitable doctrine, courts should consider whether its consequences are equitable; the absence of a state certification procedure, while not dispositive, points to the long delay which would follow abstention and prolong the uncertainty that women and their physicians would have to endure.) *See also Wynn v. Carey,* 582 F.2d 1375, 1380–83 (7th Cir.1978).

Recently, in *Akron, supra,* 103 S.Ct. at 2498–2499, and in *Planned Parenthood, Kansas City, Mo. v. Ashcroft, infra,* —— U.S. ——, 103 S.Ct. 2517 at 2526 n. 21, 76 L.Ed.2d 733 (1983), the Supreme Court declined to abstain from considering challenges to statutory provisions regarding notification and parental consent. Similarly, in *Indiana Planned Parenthood v. Pearson, infra,* 716 F.2d 1127 at 1133 (7th Cir.1983) the Seventh Circuit was urged to abstain until the Indiana courts had an opportunity to construe the procedural aspects of the notification statute. The court rejected that suggestion. In addition to its

concern with respect to inadequate bypass procedures, the court was also troubled, as are we, "that a substantial period of time will elapse before a state record of interpretations of the statute will be developed, deterring in the meantime many minors from seeking waiver of parental notification." *Id.*

Because Illinois lacks a procedure whereby a federal district court may certify state law questions to the Illinois Supreme Court for relatively quick determination, *see Wynn, supra,* 449 F.Supp. at 1314, citing *Bellotti I,* and because of the urgency inherent in any constitutional determination of the abortion rights of young women, we do not believe that abstention is appropriate here.

### 24 Hour Waiting Period

Plaintiffs first contend that the 24 hour waiting period required by section 4(a) is unconstitutional, based on the recent Seventh Circuit decision in *Indiana Planned Parenthood Affiliates' Ass'n, Inc. v. Pearson,* 716 F.2d 1127 (7th Cir.1983) ("*Pearson* "). In *Pearson,* the court considered the constitutionality of several sections of an Indiana statute requiring that a physician not perform an abortion upon an unemancipated minor without first notifying her parents. Specifically, the plaintiffs had challenged the constitutional sufficiency of the statutory provisions regarding waiver of the .notice requirement. In concluding that these provisions were constitutionally inadequate, the Seventh Circuit based its analysis expressly on the two Supreme Court cases decided last year, *Akron* and *Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft,* —— U.S. ——, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) ("*Ashcroft* ").

Plaintiffs point out that the notice provisions in the statute struck down in *Pearson* (Ind.Code § 35–1–585–2.5(a)) are virtually indistinguishable from the notice provisions of SB 521. Section 2.5(a) provides:

Sec. 2.5. (a) No physician shall perform an abortion upon an unemancipated pregnant woman under the age of eighteen (18) years without first having given at least twenty-four (24) hours actual notice to one (1) of the parents or the legal guardian of the minor pregnant woman as to the intention to perform such abortion, or if such parent or guardian cannot be reached after a reasonable effort to find him or her, without first having given at least forty-eight (48) hours constructive notice to one (1) of the parents or the legal guardian of the minor pregnant woman by certified mail to the last known address of one (1) of the parents or guardian computed from the time of mailing.

In *Pearson,* Judge Pell held that "the state cannot require that an abortion be delayed *once notice has been effected* upon a minor's parents." *Pearson, supra,* 716 F.2d at 1143 (emphasis added). The statute before us requires a waiting period of at least twenty-four hours after notice has been given to the minor's parents, precisely the same waiting period as in *Pearson.*

While the Supreme Court has not "directly addressed the constitutionality of waiting periods imposed in connection with parental notification or consent statutes," *Pearson, supra,* 716 F.2d at 1142, it has found a 24 hour waiting period unconstitutional as applied to adult women seeking abortions. *Akron, supra,* 103 S.Ct. at 2503. Such a waiting period impermissibly burdens a woman's abortion choice by causing delay. The delay increases the cost and attendant scheduling problems of an abortion by requiring a woman to make two trips to the abortion clinic and often results in a delay of more than 24 hours. Both the Seventh Circuit and the Supreme Court have voiced concern over the "two-trip" problem and we share this concern. The possible necessity of "two-trips" would affect minors and incompetents to the same degree that it affects an adult woman.[7]

---

7. Plaintiffs offer the affidavits of Drs. Charles and Zbaraz, Alexa Markoff, presently a social worker at the Pregnancy Termination Unit at

Michael Reese Hospital and Medical Center, and Ruth Osgood, Director of Educational Services at the Concord Medical Center, Chicago,

■ In *Akron*, the Court held that no legitimate state interest was shown to be furthered by "an arbitrary and inflexible waiting period." *Akron, supra*, 103 S.Ct. at 2503. This holding was based on the Court's conviction that the State's legitimate concern, that a woman's decision be informed, was not reasonably served by a 24 hour delay. *Id.* While the considerations with respect to minors are not identical with those applicable to adults, in the light of *Akron* and *Pearson*, we conclude that the waiting period of at least 24 hours mandated by SB 521 is invalid.

### Alternative Procedure to Notification

Plaintiffs' second argument for the unconstitutionality of SB 521 relates to the alternative procedure to notification. Relying on *Pearson, Akron*, and *Ashcroft*, they claim that the judicial alternative to parental notice is inadequate because (1) SB 521 provides no assurance of an expedited appeal; (2) there is no assurance of anonymity at the trial or appellate court level; and (3) the procedures for obtaining judicial waiver of notice are unconstitutional because they fail to provide for assistance in initiating a petition.

■ The State's interest in protecting immature minors will sustain a requirement of a consent or notice substitute, either parental or judicial. *Cf. Akron, supra*, 103 S.Ct. at 2497. But the State must assure that an adequate alternative procedure is available to create an "opportunity for case-by-case evaluations of the maturity of pregnant minors." *Akron, supra*, 103 S.Ct. at 2499, quoting *Bellotti II*, 443 U.S. at 643 n. 23, 99 S.Ct. at 3048 n. 23. Further, the alternative procedure must assure that a resolution of the issue, and any appeals therefrom, will be completed with anonymity and sufficient expedition to provide for an effective opportunity for an abortion to be obtained. *Bellotti II, supra*, 443 U.S. at 644, 99 S.Ct. at 3048. While the Court's view of alternative procedures has been considered in the context of consent statutes, the constitutional analysis applicable to parental consent statutes is similarly applicable to parental notification provisions; as a practical matter a notification requirement may well have the same deterrent effect on a minor seeking an abortion as a consent statute. *Pearson, supra*, 716 F.2d at 1131–1132, citing *Matheson, supra*, 450 U.S. at 420 & n. 9, 101 S.Ct. at 1177 & n. 9 (Powell, J. concurring). Deterrence, of course, is one of the principal objectives of its proponents.

In *Ashcroft*, the Supreme Court upheld for the first time a statute requiring minors to secure parental or judicial consent, Mo.Rev.Stat. § 188.028, because it provided for a judicial alternative consistent with established legal standards. 103 S.Ct. at 2525–2526. The Court noted that the Missouri statute assured anonymity by allowing a minor to use her initials on the petition and it exempted from the consent requirement and from the alternative requirement of a judicial proceeding "emancipated" women under the age of 18.[8] Further, the statute provided the framework for a constitutionally sufficient means of expediting judicial proceedings by requiring that the appeal be perfected within five days from the filing of notice to appeal and by requiring that the Missouri supreme court "*shall*, by court rule, provide for expedited appellate review of cases appealed under this section." Mo.Rev.Stat. § 188.028.2(6) (emphasis added).

Illinois, to support their claim that the waiting period significantly burdens pregnant minors seeking abortions by adding additional stress, costs, and, by additional delay, increasing the potential for medical complications. Pl.Mem. for Prelim. Injunction. *Cf. Matheson, supra*, 450 U.S. at 412, 101 S.Ct. at 1172, in which appellants challenged a parental notification statute as unconstitutional for failure to *include* a mandatory period of delay after the physician notifies the parents.

**8.** In *Danforth, supra*, 428 U.S. at 75, 96 S.Ct. at 2843, the Court held unconstitutional Missouri's parental consent requirement for all unmarried minors under the age of 18.

In *Akron,* the Court invalidated a parental consent ordinance [9], section 1870.05(B), because, among other reasons, it contained a blanket determination that *all* minors under the age of fifteen are too immature to make an abortion decision or that an abortion never may be in the minor's best interests without parental approval. *Akron, supra,* 103 S.Ct. at 2498. The Court found that the *Akron* ordinance was not "reasonably susceptible of being construed to create an 'opportunity for case-by-case evaluations of the maturity of pregnant minors.'" *Id.* at 2499, quoting *Bellotti II,* 443 U.S. at 643 n. 23, 99 S.Ct. at 3048 n. 23.

In *Pearson,* the Seventh Circuit, applying the rationale of *Akron* and *Ashcroft,* struck down an Indiana statute as procedurally defective. The court found the Indiana statute more analogous to the ordinance invalidated in *Akron,* than to the statute upheld in *Ashcroft.* Unlike the Missouri statute, the Indiana statute did not "even mention appeals, much less specifying the time in which they must be perfected or directing the Indiana Supreme Court to promulgate rules governing expedited appellate review." *Pearson, supra,* 716 F.2d at 1135. The statute did not thus "assure" expeditious consideration of appeals, as required by *Bellotti II.* The Seventh Circuit concluded:

> If the statute had specified the procedure for appeals or at least directed the Indiana Supreme Court to promulgate rules governing expedited appeals, we would be satisfied .... As it is, however, the only assurance we have that Indiana courts will expedite appeals is the state's assertion that they will, yet we do not understand how, in the absence of legislation, the state has control over how the courts manage their dockets.

*Pearson, supra,* 716 F.2d at 1136–1137 (citation omitted). The court also noted that the statute impermissibly failed to provide for the appointment of counsel to minors.

We now consider the specific provisions of SB 521 under these relevant Supreme Court and Seventh Circuit guidelines.

### Is Expedition Assured by SB 521?

■ Defendants argue that the procedures for judicial waiver of notice in section 5 of SB 521 "read like a checklist" of those constitutional requirements enunciated in *Bellotti II* and *Ashcroft.* We do not agree.

The Missouri statute upheld in *Ashcroft,* Mo.Rev.Stat. § 188.028.2(6) (Supp.1982), contained the following mandatory language: "[b]ecause time may be of the essence regarding performance of the abortion, the supreme court of this state *shall,* by court rule, provide for expedited appellate review of cases appealed under this section" (emphasis added). It also provided that "[t]he record on appeal shall be completed and the appeal shall be perfected within 5 days from the filing of the notice of appeal."

In contrast, sections 5(f) and (g) of SB 521 provide that an expedited confidential appeal shall be available "as the [Illinois] Supreme Court provides by rule" and "respectfully" requests the court to promulgate any necessary rules and regulations. This precatory language is far different than the directive found in the *Ashcroft* statute. Nor does SB 521 require that an appeal be perfected within a limited period of days, thereby ensuring expeditious review.

Defendants claim that the Illinois Supreme Court is "respectfully requested", rather than "directed" to issue the appropriate rules because under the Illinois con-

---

9. The Court of Appeals upheld § 1870.05(A), a 24 hour parental notice provision, as a constitutionally permissible regulation insofar as it applied to immature and dependent minors who live with their parents and are not emancipated by marriage or otherwise. *Akron Center For Reproductive Health v. City of Akron,* 651 F.2d 1198, 1206 (6th Cir.1981). ("Until the requirements of section 1870.05(A) are questioned by a minor who claims to be mature or emancipated or claims that notice would not be in her best interest, we cannot hold the section facially invalid.") (The plaintiffs before the Sixth Circuit in *Akron* were abortion clinics and a physician. *Id.* at 1205.) The validity of the Sixth Circuit's ruling was not challenged in the Supreme Court. *Akron, supra,* 103 S.Ct. at 2497 n. 29.

stitution only the Illinois Supreme Court, and not the General Assembly, may establish rules for appeals. But this begs the question. The statute could have specified an adequate timetable and its effective date postponed until such time as the Illinois Supreme Court established an appropriate rule. The fact is that the language of SB 521 simply does not reflect the necessity of rules governing expeditious appeals of abortion decisions. *Cf. Pearson, supra,* 716 F.2d at 1136 ("If the statute had *specified* the procedure for appeals or at least *directed* the Indiana Supreme Court to promulgate rules ... we would be satisfied") (emphasis added).

We find ourselves in the same position as the Seventh Circuit in *Pearson* —we have no assurance that Illinois courts will expedite appeals except for the defendants' bare assertion that they will. But in the absence of legislation, the state does not have control over how courts manage their dockets. *Id.* at 1136–1137. No procedures now exist in the Illinois Supreme Court rules or otherwise for expeditious appeal from a trial court's denial of a pregnant minor's request for waiver of the notification requirement.

## Confidentiality

The plurality in *Bellotti II* required that the alternative to parental consent must "assure" that the resolution of the issue "be completed with anonymity". 443 U.S. at 644, 99 S.Ct. at 3048. Plaintiffs contend that SB 521 does not assure anonymity either at the trial or appellate court level.

SB 521 does contain several provisions relating to confidentiality. Section 5(c) of the Act requires that court proceedings for waiver of notice be "confidential". Section 5(e) provides that the court order a "confidential" record of the evidence. Section 5(f) states that a "confidential" appeal shall be available "as the Supreme Court provides by rule...." Section 5(g) respectfully requests the Illinois Supreme Court to promulgate rules necessary to ensure confidentiality of the proceedings. Defendants argue that these sections are broad enough to assure that a minor's or incompetent's petition for waiver of notice will be confidential and that her identity will not be disclosed.

Plaintiffs contend that defendants confuse confidentiality and anonymity, a distinction we find somewhat fine, but not without some merit.[10] As an example of a constitutionally adequate provision, plaintiffs refer us to the statutory provision in *Ashcroft* which assured anonymity by the provision that allows the minor to use her initials on the petition. 103 S.Ct. at 2525 n. 16. Plaintiffs point out, as another example of the distinction between confidentiality and anonymity, the provision of the Illinois Juvenile Act that provides for confidential records, with certain exceptions, Ill. Rev.Stat. ch. 37, § 702–9, but under which proceedings are brought in the name of the juvenile, thus eliminating anonymity. Plaintiffs urge that, while section 5(c) offers a pregnant minor confidential proceedings in the trial court, the delineated procedure does not guarantee anonymity at trial and on appeal as required by *Bellotti II* and *Akron.*

The same problem raised by sections 5(f) and (g) with respect to expeditious appeals is present with respect to the confidentiality, or, rather, anonymity, of appeals—the merely precatory language requesting the Illinois Supreme Court to provide rules relating thereto. We are also troubled by the section 7 exception to notice, the submission of signed *notarized* statements indicating that parents or the legal guardian have been notified, which will almost certainly compromise the anonymity of a minor seeking an abortion. Plaintiffs rightfully observe that submission to a notary of an affidavit stating that the parties have been previously notified of the minor's abortion decision may, in many communi-

10. Webster's Third New International Dictionary (1963) defines "confidential" as "known only to a limited few", "not publicly disseminat- ed." "Anonymity" is defined as an "absence or lack of identification", being anonymous or "nameless".

ties, be tantamount to publication of the information in the local newspaper.

We conclude, therefore, that although SB 521 does sprinkle the word "confidential" throughout its provisions, it does not safeguard a minor's or incompetent's anonymity as required by *Bellotti II,* 443 U.S. at 644, 99 S.Ct. at 3048—the anonymity necessary to provide a private opportunity for an abortion to be obtained.

### Failure to Provide Assistance

Plaintiffs also challenge as unconstitutional the procedures for obtaining waiver of the notification requirement because they fail to provide for assistance in initiating a petition and thus will deny many minors an effective opportunity to seek a waiver. Relying on the affidavits of Ruth Osgood and Alexa Markoff, plaintiffs contend that the task of filing a petition for waiver would be a daunting one for a pregnant minor, unless the court assisted her.

Section 5(b) does provide that the court appoint a guardian *ad litem* for the minor or incompetent and that the court provide her with counsel upon her request. Plaintiffs claim, however, that this does not solve the petition-filing problem, as counsel may be appointed only after the petition is filed. They say that SB 521 lacks the pre-filing assistance provided by the Missouri statute, Mo.Rev.Stat. § 188.028.2(1), upheld in *Ashcroft* which directed the juvenile court to "assist the minor or next friend in preparing the petition and notices required pursuant to this section."

We recognize that gaining access to the judicial process is fraught with potential difficulties and "red tape", especially for a young woman who is already in a stressful situation. But, as defendants point out, it will be no more difficult for a minor to find and make initial contact with an Illinois circuit court than for a Missouri minor to find and make contact with the juvenile court, as required in the statute upheld in *Ashcroft.* And once she is present in the Illinois court, the court will appoint counsel upon her request, pursuant to section 5(b).

While we are not so sanguine as defendants in assuming that court clerks will exhibit alacrity in helping these adolescents file petitions, barring any directive to do so, we do believe that appointed counsel can assist her in many other subsequent aspects of the proceeding. *Cf. Pearson, supra,* 716 F.2d at 1138 n. 11 (holding that the Indiana statute impermissibly failed to provide for the appointment of counsel to minors in waiver proceedings). The Seventh Circuit implied that appointment of counsel after filing, rather than for pre-filing was constitutionally sufficient. *Id.* at n. 11. ("We recognize that appointed counsel will not be available until after the minor has filed her petition, because a court has to know the minor is seeking to avoid notification in order to appoint counsel for her.") Therefore, we are unable to hold that pre-filing assistance is a *sine qua non* to an effective opportunity for obtaining judicial waiver and a constitutional statute. However, it would certainly be desirable to do so as was provided in the statute upheld in *Ashcroft, supra,* 103 S.Ct. at 2519, n. 4 (Mo.Rev.Stat. § 188.028.2(1)).

### SB 521 and "Incompetents"

Plaintiffs contend that section 4(a)'s requirement, that a physician notify an incompetent patient's guardian is unconstitutionally overboard. Both plaintiffs and defendants charge that the other has misread the provisions of the Illinois Probate Act regarding "incompetents". Plaintiffs claim that the notice provisions of the Parental Notice Abortion Act will apply to persons for whom a guardian has been appointed, but who are nonetheless able to make responsible decisions with respect to pregnancy termination. Defendants say that those "responsible" persons are not included in the guardian provisions of sections 11a–3(a)(1) and 11a–3(a)(3) of the Probate Act, and thus the notice requirement of the Abortion Act will not apply to them.

Section 3 of the Parental Notice Abortion Act defines an "incompetent" as "any person who has been adjudged a disabled person and has had a guardian appointed for

her as provided under Section 11a–3(a)(1) or Section 11a–3(3) [sic] [11] of the Probate Act of 1975 [Article XIa, 'Guardians for Disabled Adults']." Ill.Rev.Stat. ch. 110 ½, § 11a–3 provides:

**11a–3. Adjudication of disability— Power to appoint guardian**

§ 11a–3. Adjudication of disability— Power to appoint guardian. (a) Upon the filing of a petition by a reputable person or by the alleged disabled person himself or on its own motion, the court may adjudge a person to be a disabled person and may appoint (1) a guardian of his person, if because of his disability he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person.

Defendants contend that a person for whom a limited guardian has been appointed, under Ill.Rev.Stat. ch. 110 ½, § 11a–12(c) (1981), is not an "incompetent" within the scope of section 3 of SB 521 nor under section 11a–3 of the Probate Act. Section 11a–12(c) provides:

(c) If the respondent is adjudged to be disabled and to lack some but not all of the capacity as specified in Section 11a–3, the court shall appoint a limited guardian of the respondent's person or estate or both. The court shall enter a written order stating the factual basis for its findings and the limits of the duties and powers of the guardian and the legal disabilities to which the respondent is subject.

Defendants also point out that Ill.Rev. Stat. ch. 110 ½, § 11a–14(c) (1981) specifically provides that "[t]he appointment of a limited guardian under this article shall not constitute a finding of legal incompetence."

Thus, they argue that, for notice to be required by section 4(a) of SB 521, it is necessary that a plenary guardian of the person be appointed and that occurs only when "the respondent is adjudged to be disabled and totally without capacity as specified in Section 11a–3...." Ill.Rev. Stat. ch. 110 ½, § 11a–12(b) (1981). [12]

We read the relevant portions of the Parental Notice Abortion Act and the Illinois Probate Act as follows: (1) an "incompetent", falling within the notice provisions of section 4(a) of the Abortion Act, is defined in section 3(e) of the Abortion Act as an adjudged disabled person who has had a guardian appointed of her person, section 11a–3(a)(1) of the Probate Act, or of her person and her estate, section 11a–3(a)(3) of the Probate Act; (2) a guardian "of her person" is appointed under section 11a–3(a)(1) only if a person "lacks sufficient understanding or capacity to make or communicate responsible decisions concerning [her] care ..."; and (3) a guardianship "of her person and her estate", under section 11a–3(a)(3), encompasses the same requirement of lack of capacity and adds the requirement that she also be unable to manage her estate or her financial affairs. Cf. *Matter of McPeak's Estate*, 53 Ill.App.3d 133, 136, 11 Ill.Dec. 349, 352, 368 N.E.2d 957, 960 (1977) ("The capability to manage one's person does not resolve itself upon the question of whether the individual can accomplish tasks without assistance but rather whether that individual has the capacity to take care and intelligently direct that all his needs are met through whatever device is reasonably available under the circumstances.") *See also* Ill.Rev.Stat. ch. 110 ½, § 11a–3(b) which provides:

(b) Guardianship shall be utilized only as is necessary to promote the well-being

11. There is no section 11a–3(3) in the Illinois Probate Act. Thus, our discussion of the issues relevant to incompetents is based on the assumption that the legislature's intended reference is to section 11a–3(a)(3). This confusion should be remedied in any future draft of the Parental Notification Act.

12. One commentator notes that these provisions of the guardianship for disabled adults legislation of 1978 and 1979, at issue here, expand the

due process protections afforded an alleged disabled person and encourage those involved in the guardianship process to discern and utilize guardianship alternatives least restrictive of a disabled person's rights. *See* Jost, *The Illinois Guardianship for Disabled Adults Legislation of 1978 and 1979: Protecting the Disabled from Their Zealous Protectors*, 56 Chi.Kent L.Rev. 1087 (1980).

of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence. Guardianship shall be ordered only to the extent necessitated by the individual's actual mental, physical and adaptive limitations.

*See Estate of Galvin v. Galvin,* 112 Ill. App.3d 677, 681, 68 Ill.Dec. 370, 372, 445 N.E.2d 1223, 1225 (1983)

Under the new sections, the legislature has made it clear that although a person may be a disabled person, in the statutory sense of not being fully able to manage his person, a guardian is not therefore permissible or appropriate, if that person is capable of making and communicating responsible decisions concerning the care of his person. Thus, a person who was physically unable to care for himself, but who could direct others in such activity, would not necessarily need a guardian over his person. Similarly, a person might be a "disabled person" but nevertheless not be in need of a guardian over his estate, because with help from others he is able to direct and manage his affairs and estate.

quoting *Matter of Estate of Mackey,* 85 Ill.App.3d 235, 238, 40 Ill.Dec. 525, 528–529, 406 N.E.2d 226, 229–230 (1980).

■ Based upon the plain language of the Illinois Probate Act and relevant case law, we do not believe that the notice provisions of section 4 of the Abortion Act apply to those for whom a limited guardian has been appointed and who, unlike those for whom a plenary guardian has been appointed, may have sufficient ability to engage in meaningful decision-making. The notice provisions of the Abortion Act are not, therefore, constitutionally overbroad with respect to "incompetents". This conclusion, however, is based on the assumption that section 3(e) of SB 521 contains an incorrect citation to the nonexistent section 11a–3(3) and should refer to section 11a–3(a)(3). *See* n. 12 *infra.* This ambiguity should be corrected.

*Severability*

■ We have thus far found that SB 521's 24 hour waiting period for notification is unconstitutional as is the judicial alternative to parental notice. On the other hand, we have found the provisions with respect to providing assistance and the definition of "incompetents" to be constitutionally sufficient though susceptible of improvement. The issue remaining for consideration is whether the entire Act must fall or whether those provisions that we have held unconstitutional can be properly severed. Our inquiry in this regard is twofold: (1) whether under Illinois law those provisions are severable; and (2) whether those provisions are constitutionally severable, that is whether the remaining sections, by themselves, can still pass constitutional muster.

Defendants contend that even though SB 521 lacks a severability clause within the Act itself, its provisions are nevertheless severable due to the applicability of the general provision, Ill.Rev.Stat. ch. 1, § 1032 (1981) which provides:

**1032. Severability**

If any provision of an Act enacted after the effective date of this amendatory Act or application thereof to any person or circumstances is held invalid, such invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid application or provision, and to this end the provisions of each Act enacted after the effective date of this amendatory Act are severable, unless otherwise provided by the Act.

By its very terms, the severability of section 1032 applies only to those provisions "which can be given effect without the invalid ... provision." Given the invalidity of two basic provisions of the statute, the 24 hour waiting period and the waiver of notification procedures, there is little remaining to sever which would have any operative significance.

*Other Considerations*

SB 521 presents other difficulties which, though not raised explicitly by the parties,

merit discussion, especially because this Act may be reenacted in an effort to comply with constitutional requirements.

We were troubled initially by the first provision of Section 8 providing that "any person ... who intentionally, knowingly, or recklessly fails to conform to any requirement of this Act, is guilty of a Class A misdemeanor." Although Ill.Rev.Stat. ch. 38, § 4–4 [13], defining "intent", and Ill.Rev. Stat. ch. 38, § 4–5 [14], defining "knowledge", provide relatively clear examples of proscribed conduct, we have serious doubt that Ill.Rev.Stat. ch. 38, § 4–6 [15], defining "recklessness", is applicable to the term "recklessly fails to conform" as stated in Section 8. While this may appear to be a mere semantic difficulty, it should be cleared up to avoid a potential "void for vagueness" problem. *See, e.g., Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972) (impermissibly vague laws offend due process by not giving a person of ordinary intelligence a reasonable opportunity to know what is prohibited, by not giving those responsible for enforcement explicit standards of applying them, and they operate to inhibit the exercise of freedoms.) Since the "actual notice" provision itself presents problems, as we discuss *infra*, the

standard of recklessly failing to conform to it compounds the difficulty.

The second provision of SB 521's Section 8, regarding civil actions against those who fail to provide persons with the requisite information presents a far more serious impediment. That paragraph states that failure to provide information is "prima facie evidence of failure to obtain informed consent and of interference with family relations" in a civil action and, further, that "the law of this State shall not be construed to preclude the award of *exemplary* damages" in appropriate civil actions. (Emphasis added.) This language raises the possibility of actions in which there are *no* compensatory damages and yet, because of Section 8's wording, a plaintiff may be able to recover punitive damages without compensatory damages, *i.e.* without sustaining any actual damages at all!

Given the express language in the statute that Illinois law should "not be construed to preclude the award of exemplary damages," the above result might occur despite the well-settled law in Illinois that punitive damages may not be awarded in the absence of actual damages. *See, e.g., Jones v. Reagan*, 696 F.2d 551 (7th Cir. 1983); *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956 (7th Cir.1982); *Rhodes v. Uni-*

---

**13.** Ill.Rev.Stat. ch. 38, § 4–4 (1983) provides:
**§ 4–4. Intent**
A person intends, or acts intentionally or with intent to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct.
Laws 1961, p. 1983, § 4–4, eff. Jan. 1, 1962.

**14.** Ill.Rev.Stat. ch. 38, § 4–5 (1983) provides:
**§ 4–5. Knowledge**
A person knows, or acts knowingly or with knowledge of:
(a) The *nature or attendant circumstances* of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.
(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

Conduct performed knowingly or with knowledge is performed wilfully within the meaning of a statute using the latter term, unless the statute clearly requires another meaning.
Laws 1961, p. 1983, § 4–5, eff. Jan. 1, 1962.

**15.** Ill.Rev.Stat. ch. 38, § 4–6 provides:
**§ 4–6. Recklessness**
A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning.
Laws 1961, p. 1983, § 4–6, eff. Jan. 1, 1962.

*royal, Inc.,* 101 Ill.App.3d 328, 56 Ill.Dec. 834, 427 N.E.2d 1380 (1981); *Ochoa v. Maloney,* 69 Ill.App.3d 689, 26 Ill.Dec. 22, 387 N.E.2d 852 (1979). Punitive damages should not go beyond deterrence and become a windfall. *See Lenard v. Argento,* 699 F.2d 874 (7th Cir.1983), *cert. denied sub nom Argento Sansone v. Lenard,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983).

Additionally, it is equally well-established in Illinois that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence, or when the defendant acts willfully and with wanton disregard of the rights of others. *Carter v. Mueller,* 120 Ill.App.3d 314, 75 Ill.Dec. 776, 457 N.E.2d 1335 (1983), citing *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). *Cf. Hazelwood v. Ill. Central Gulf R.R.,* 114 Ill.App.3d 703, 71 Ill.Dec. 320, 450 N.E.2d 1199, 1207 (1983) ("the nature of punitive damages in Illinois is clearly singular—it is *punishment* for the defendant") (emphasis in original). Punitive damages are in the nature of a criminal penalty and are not favored under the law. *Boddie v. Litton Unit Handling Systems, A Division of Litton Systems, Inc.,* 118 Ill.App.3d 520, 74 Ill.Dec. 112, 455 N.E.2d 142 (1982).

The exemplary damages provision of Section 8 is further complicated because of its conjunction with "interference with family relations", a concept most often associated with the relationship between spouses— "loss of consortium", *see, e.g., Martin v. Kiendl Construction Co.,* 108 Ill.App.3d 468, 63 Ill.Dec. 824, 438 N.E.2d 1187 (1982), and, in the abortion context, a somewhat nebulous concept.

Our research discloses no abortion statute that provides for exemplary damages in any civil action, let alone a criminal statute that attempts to create a tort whose boundaries are vague and ill-defined. For instance, La.Rev.Stat.Ann. § 40:1299.-35.5 (West Supp.1984) (parental consent statute providing a constitutionally adequate alternative procedure, *Application of Doe,* 407 So.2d 1190 (La.1981)) provides only that violations of its provisions result in a fine of not more than $1000 or imprisonment for not more than two years or both. *Id.* at § 40:1299.35.18. The North Dakota Abortion Control Act, providing for notice to parents, provides only for criminal penalties. *See* N.D.Cent.Code § 14–02.1–04 *et seq.* (The statute, struck down in *Leigh v. Olson,* 497 F.Supp. 1340 (D.N.D. 1980) because the notice provisions applied in *every* case regardless of the maturity of a minor, was reenacted. S.L.1981, ch. 164, § 1.) Tennessee's notice provision similarly provides for criminal penalties only. *See* Tenn.Code Ann. § 39–4–201(b) (1982). *See also* Utah Code Ann. § 76–7–304 (1978) (notification, "if possible", and criminal penalty for violation) (upheld in *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981)); Mass.Gen.Laws Ann. ch. 112, §§ 12N, 12T (West Supp.1981); Ohio Rev.Code Ann. § 2919.12(C) (1981).

Still another source of potential confusion engendered by SB 521 is its requirement and definition of "actual notice". Section 3(c) states that actual notice is "giving notice directly or by telephone." But this leaves numerous questions unanswered. Is a physician expected to seek out the parents at their home or place of work in order to effect direct notice? How many times must he or she try to reach them by telephone before the physician can be said to "recklessly fail" to give notice?

There is no constructive notice provision in SB 521 which would permit a physician to fulfill the notice requirement by certified mail to the last known address of the parents. This provision, present in other notification statutes, can alleviate the vagaries of telephone notice and furnish conclusive and relatively speedy proof of notice. *Cf.* Ind.Code § 35–1–58.5–2.5 (48 hour constructive notice provision held presumptively constitutional in *Indiana Planned Parenthood v. Pearson,* 716 F.2d 1127, 1143 (7th Cir.1983); Me.Rev.Stat. Ann. Tit. 22, § 1597.2.A,B (1980) (if 24 hours actual notice is not possible, written notice by certified mail to last known address, mailed 48 hours before the abortion); N.D.Cent.Code § 14–02.1–03.1 (same).

The difficulty posed by SB 521's Section 3(c) is that actual or telephone notice may *never* be effectuated, thus either postponing for a significant period of time or effectively denying altogether, a minor's access to abortion. This delay is particularly egregious in the abortion context where time is truly of the essence. We believe that an alternative provision, allowing for constructive notice in the event direct or telephone notice is unavailing within a short period of time is desirable, if not necessary, to remedy the defect.[16]

### Conclusion

Plaintiffs' motion for summary judgment is granted. Defendants are enjoined from enforcing any provisions of the Parental Notice Abortion Act of 1983. An appropriate order will enter.

## APPENDIX I

## PARENTAL NOTICE ABORTION ACT

### PUBLIC ACT 83-890

### SENATE BILL 521

AN ACT relating to notice of abortions performed on minors and incompetents, and to repeal Section 3.3 of the "Illinois Abortion Law of 1975", veto overridden November 20, 1975, as amended.

Be it enacted by the People of the State of Illinois, represented in the General Assembly:

[S.H.A. ch. 38, ¶ 81–61]
Section 1. Short title. This Act shall be known and may be cited as the Parental Notice of Abortion Act of 1983.

[S.H.A. ch. 38, ¶ 81–62]
Section 2. Legislative purpose and findings. (a) It is the intent of the legislature in enacting this parental notice provision to further the important and compelling State interests of: 1) protecting minors against their own immaturity, 2) fostering the family structure and preserving it as a viable social unit, and 3) protecting the rights of parents to rear children who are members of their household.

(b) The legislature finds as fact that: 1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, 2) the medical, emotional and psychological

---

**16.** At the time this opinion was issued, our research disclosed no cases challenging parental notification statutes in the abortion context in the wake of *Akron* and *Ashcroft,* except the Indiana statute challenged in *Pearson.* However, in *Planned Parenthood Ass'n v. Matheson,* 582 F.Supp. 1001 (D. Utah 1983), the District Court declared invalid a Utah statute requiring any person providing contraceptives to a minor "to notify, whenever possible," the minor's parents because it failed to provide a constitutionally adequate alternative procedure. The court's analysis was based, in part, on *Roe v. Wade, H.L. v. Matheson* and *Akron.*

consequences of abortion are serious and can be lasting, particularly when the patient is immature, 3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, 4) parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child, and 5) parents who are aware that their minor daughter has had an abortion may better ensure that she receives adequate medical attention after her abortion. The legislature further finds that parental consultation is usually desirable and in the best interests of the minor.

[S.H.A. ch. 38, ¶ 81–63]

Section 3. Definitions. For purposes of this Act, the following definitions will apply:

(a) "minor" means any person under the age of 18;

(b) "emancipated minor" means any minor who is or has been married or has by court order otherwise been freed from the care, custody, and control of her parents;

(c) "actual notice" means the giving of notice directly, in person or by telephone;

(d) "abortion" means the use of any instrument, medicine, drug or any other substance or device with intent to terminate the pregnancy of a woman known to be pregnant with intent other than to cause live birth;

(e) "incompetent" means any person who has been adjudged a disabled person and has had a guardian appointed for her as provided under Section 11a-3(a)(1) or Section 11a-3(3) of the Probate Act of 1975.[1]

[1] Chapter 110½, ¶ 11a-3.

[S.H.A. ch. 38, ¶ 81–64]

Section 4. Notice required. (a) No person shall perform an abortion upon an unemancipated minor or upon an incompetent unless he or his agent has given at least 24 hours actual notice to both parents or to the legal guardian of the minor pregnant woman or incompetent of his intention to perform the abortion or unless he or his agent has received a written statement or oral communication by another physician, hereinafter called the "referring physician", certifying that the referring physician or his agent has given such notice.

(b) If the minor's or incompetent's parents are divorced, or one parent is not available to the person performing the abortion or his agent or the referring physician or his agent in a reasonable time or manner, then notice to the parent with custody or to the parent who is available shall be sufficient. If neither parent nor the legal guardian is available to the person performing the abortion or his agent or the referring physician or his agent within a reasonable time or manner, notice to any adult person standing in loco parentis shall be sufficient.

(c)    A minor or incompetent who objects to notice being given her parents or legal guardian under this section may petition, on her own behalf or by next friend, the circuit court of the county in which the minor resides or in which the abortion is to be performed for a waiver of the notice requirement of this section pursuant to the procedures of Section 5 of this Act.[1]

[1] Paragraph 81-65 of this chapter.

[S.H.A. ch. 38, ¶ 81-65]

Section 5.    Procedure for waiver of notice.    (a) The requirements and procedures under this Act are available to minors and incompetents whether or not they are residents of this State.

(b)    The minor or incompetent may participate in proceedings in the court on her own behalf and the court shall appoint a guardian ad litem for her.    The court shall advise her that she has a right to court appointed counsel and shall provide her with such counsel upon her request.

(c)    Court proceedings under this Section shall be confidential and shall be given such precedence over other pending matters as is necessary to ensure that the court may reach a decision promptly, but in no case shall the court fail to rule within 48 hours of the time of application, provided that the 48 hour limitation may be extended at the request of the minor or incompetent.

(d)    Notice shall be waived if the court finds either:

(i)    That the minor or incompetent is mature and well-informed enough to make the abortion decision on her own, or

(ii)    That notification of those to whom Section 4 of this Act[1] requires that notice be given would not be in the best interests of the minor or incompetent.

(e)    A court that conducts proceedings under this Section shall issue written and specific factual findings and legal conclusions supporting its decision and shall order that a confidential record of the evidence be maintained.

(f)    An expedited confidential appeal shall be available, as the Supreme Court provides by rule, to any minor or incompetent to whom the circuit court denies a waiver of notice.

(g)    The Supreme Court is respectfully requested to promulgate any rules and regulations necessary to ensure that proceedings under this Act are handled in an expeditious and confidential manner.

(h)    No filing fees shall be required of any minor or incompetent who avails herself of the procedures provided by this Section.

[1] Paragraph 81-64 of this chapter.

[S.H.A. ch. 38, ¶ 81-66]

Section 6. Medical emergency exception. The requirements of Section 4 of this Act[1] shall not apply when, in the best medical judgment of the physician on the facts of the case before him, a medical emergency exists that so complicates the pregnancy as to require an immediate abortion. A physician who does not comply with Section 4 of this Act by reason of this exception shall certify in writing the medical indications on which his judgment was based.

A report indicating the basis for failure to give notice shall be filed with the Department of Public Health of the State of Illinois on forms prescribed by the Department. Dissemination of an original and a redacted copy of this report shall comply with the reporting and confidentiality requirements of Section 10 of the Illinois Abortion Law of 1975.

[1] Paragraph 81-64 of this chapter.

[S.H.A. ch. 38, ¶ 81-67]

Section 7. Other exceptions. (a) When the parties to whom notice must be given pursuant to Section 4 of this Act[1] have already been notified and those parties accompany the minor or incompetent to the place where the abortion is to be performed, or submit signed notarized statements indicating that they have been notified, the requirements of Section 4 of this Act shall not apply.

(b) Notwithstanding any other provision of this Act, no notice need be given to any father of any minor requesting an abortion when the minor's mother accompanies her to the abortion and submits a notarized statement that she has been notified and, further, states orally to the physician or his agent that she has a reasonable belief that the fetus to be aborted is the child of the minor"s father. Where the mother is deceased or otherwise unavailable, the physician or his agent may rely on a similar statement provided by any other adult relative accompanying the minor. Any physician or his agent relying on such a statement in good faith shall not be civilly or criminally liable under any provisions of this Act for failure to give notice. Nothing in subsection (b) shall be construed to limit the alternative and additional right of a minor to seek a waiver of the notice requirement in accordance with Section 5[2] on the ground that notice would not be in the best interests of the minor because the fetus to be aborted is the child of the minor's father.

[1] Paragraph 81-64 of this chapter.
[2] Paragraph 81-65 of this chapter.

[S.H.A. ch. 38, ¶ 81-68]

Section 8. Penalty. Any person who intentionally performs an abortion with knowledge that, or with reckless disregard as to whether the person upon whom the abortion is to be performed is an unemancipated minor or an incompetent,

and who intentionally, knowingly, or recklessly fails to conform to any requirement of this Act, is guilty of a Class A misdemeanor.

Failure to provide persons with information pursuant to the requirements of this Act is prima facie evidence of failure to obtain informed consent and of interference with family relations in appropriate civil actions. The law of this State shall not be construed to preclude the award of exemplary damages in any appropriate civil action relevant to violations of this Act. Nothing in this Act shall be construed to limit the common law rights of parents.

Such prima facie evidence shall not apply to any issue other than failure to inform the parents or guardian and interference with family relations in appropriate civil actions.

(Ch. 38, rep. par. 81-23.3) [S.H.A. ch. 38, ¶ 81-69]

Section 9. Section 3.3 of the "Illinois Abortion Law of 1975", veto overridden November 20, 1975, as amended,[1] is repealed.

[1] Paragraph 81-23.3 of this chapter.

[S.H.A. ch. 38, ¶ 81-70]

Section 10. This Act takes effect 90 days after it becomes a law.

VETO OVERRIDDEN: Nov. 2, 1983     EFFECTIVE: Jan. 31, 1984

Additions in text are indicated by underline; deletions by strikeouts